**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,**

v.

**Clifford ALEXANDER, Secretary of the United States Army, Col. Frank Walter, Contracting Officer of the Corps of Engineers, John Malo, Contracting Officer of the United States Army Infantry Center, Richard C. Solibakke, Chairman of the Armed Services Board of Contract Appeals, William H. Brasington, d/k/a Hugh Brasington, an Individual d/b/a Hugh Brasington Contracting Company, Defendants.**

Civ. A. No. CV478–18.

United States District Court,
S. D. Georgia.

Jan. 11, 1979.

C. James Jessee, Jr., and Walter H. Beckham, III, Jessee, Ritchie & Duncan, P. C., Atlanta, Ga., for plaintiff.

Allan M. Miller, Kirby & Miller, Columbus, Ga., for defendants.

## THIRD OPINION

LAWRENCE, Senior District Judge.

*Findings of Fact and Conclusions of Law*

### I.

*The Litigation and Issues*

This is an action by a Miller Act surety seeking declaratory and injunctive relief against the Federal Defendants and the General Contractor in connection with appeals by the latter pending before Armed

Services Board of Contract Appeals (ASBCA).*

The Federal Defendants moved to dismiss and, in the alternative, for summary judgment on the ground of lack of subject-matter jurisdiction. Hugh Brasington Contracting Company under which name William H. Brasington (hereinafter "Brasington") conducted his construction business moved to dismiss for lack of jurisdiction and venue.

The motions were argued on July 8, 1978, and briefs were filed.

In an Opinion by this Court dated September 22, 1978, the Motion of the Federal Defendants was sustained and the complaint dismissed as to all of them on the ground that the review-of-agency action statute on which the jurisdiction was based (5 U.S.C. §§ 702, 704) creates no implied subject-matter jurisdiction of district courts to review administrative actions. See *Califano v. Sanders*, 430 U.S. 99, 106 n.6, 97 S.Ct. 980, 51 L.Ed.2d 192. The motion by Brasington to dismiss for want of subject-matter jurisdiction was overruled.

This Court reserved for future determination the issue of venue. Jurisdiction was retained as to the declaratory relief sought by United States Fidelity & Guaranty Company (hereinafter "USF&G") against Defendant Brasington in connection with the rights and obligations of the parties to the Master Surety Agreement.

Following the rendition of the Opinion of September 22, 1978, plaintiff moved for reconsideration thereof. A brief was presented in support of the motion to reconsider. By an Order dated October 31, 1978, the motion for reconsideration was denied. It was further ordered that the declaratory judgment feature of the case be peremptorily assigned for hearing on November 20, 1978. An evidentiary hearing took place at that time.

The three primary issues for decision are the following:

(1)

Does venue exist in the Southern District of Georgia as to Brasington with particular reference to the Fort Benning project in the Middle District in which the Contractor resides and where his construction business maintained headquarters?

(2)

Has Brasington consented to participation by USF&G in his pending appeals so as to give the latter standing before ASBCA under the rulings and practice of such Board which make an exception if the Contractor consents thereto?

(3)

The declaring of the respective rights and obligations of the parties under the Master Surety Agreement and the performance and payment bonds issued pursuant thereto.

II.

*Factual Background*

On July 14, 1973, Brasington, and others, as indemnitors, executed a Master Surety Agreement with USF&G. By this Agreement, the indemnitors expressly warranted that they had a substantial, material and/or beneficial interest in the performance and fulfillment of obligations secured or to be secured by bonds issued by USF&G as surety to Hugh Brasington Contracting Company. The parties to the Agreement promised to exonerate, indemnify, and hold harmless USF&G as surety from and against any and all liabilities, losses, and expenses of whatsoever kind or nature imposed upon, sustained or incurred by USF&G by reason of its having executed, provided or procured said bonds, and principal's and indemnitors' failure to perform or comply with any of the provisions of the Agreement.

---

* The Federal Defendants include the Secretary of the United States Army, the Contracting Officer of the Corps of Engineers, and the Chairman of the Armed Services Board of Contract Appeals.

On May 30, 1975, USF&G became surety for the principal, Brasington, on a performance bond and labor and material bond in the amount of $2,500,000 in favor of the United States as obligee. The contract involved Barracks Modernization at Hunter Army Air Field, Savannah. The General Contractor was declared in default on December 3, 1976, and his right to proceed under such contract was terminated for default on May 27, 1977.

On June 17, 1975, plaintiff executed as surety for Brasington similar bonds in the amount of $1,059,339 relating to a Barracks Modernization project at Fort Stewart near Savannah. The contract in question became in default and Brasington's right to proceed was terminated by the Government on November 3, 1976.

On March 14, 1975, USF&G became surety on bonds in the amount of $1,955,709 in favor of the United States as obligee. The contract with Brasington was in connection with rehabilitation of various buildings at Fort Benning, Georgia. The job was completed by Brasington. Under the three bonds referred to USF&G paid various sums to contractors, sub-contractors and materialmen in Miller Act suits and claims. The amounts expended by the Surety to date in paying claims arising under the defaulted projects are:

| | |
|---|---|
| Fort Benning Project | $ 122,516.20 |
| Fort Stewart Project | 442,955.26 |
| Hunter Army Air Field Project | 1,244,606.00 |
| | |
| TOTAL | $1,810,077.46 |

In the matter of the default on the Fort Stewart job, USF&G delivered to the Government its check for $99,376.00 representing the difference between Brasington's contract price and the amount required for completion of the defaulted work. The surety reserved the right to appeal any disputes pending at the time of default as well as the declaration of default ·by the contracting officer.

In the case of the Hunter Army Air Field contract, the Government selected the completion Contractor with the assistance of the surety. However, USF&G declined to pay the difference required for the completion of the job. The amount claimed by the Government is $684,146.49. Payment thereof has been demanded and has been refused by the surety.

All of the Miller Act claims have not been settled by the Surety. Further payments will be involved.

Administrative claims against the United States were filed by Brasington in excess of $6,000,000. A bankruptcy proceeding was brought by the Contractor in the Middle District of Georgia seeking a voluntary arrangement under Chapter XI. In the schedule of assets were listed his claims against the Government arising out of the defaults on the three jobs. Brasington evaluated same at $6,416,000. The proceedings brought under Chapter XI were dismissed by the bankruptcy judge.

In the litigation in this Court, USF&G seeks a declaration of its rights under the Master Surety Agreement between it and Brasington. It provides in part that "Surety is authorized and empowered to assert, pursue and prosecute, in its discretion, and at the expense of UNDERSIGNED (in the name of PRINCIPAL, or in the name of SURETY), all claim(s) of PRINCIPAL arising or growing out of contract(s) and work done thereunder secured by BOND(S) against . . . any person, government, governmental agency . . . " Ex. A of Complaint, VI(B)(b).

By separate letters dated December 28, 1977, USF&G notified each of the Federal Defendants pursuant to the terms of the Master Surety Agreement, and in accordance with applicable State and Federal law, that as of that date, it was asserting its rights in that it thereby demanded that it be allowed to assert, pursue and prosecute, either in its own name or in the name of the principal, any and all claims of the principal arising or growing out of work done under the contracts referred to.

By a letter dated January 16, 1978 Defendant Brasington informed the ASBCA

that "Hugh Brasington, d/b/a Hugh Brasington Contracting Company, does not consent to USF&G or their attorney, C. James Jessee, Jr., singularly or individually, collectively or jointly, to prosecute any appeals . . . ."

The administrative decisions of the ASBCA foreclose any right of appeal of the claims by USF&G except with the consent thereto by the contractor.[1] In light of Defendant Brasington's letter of January 16, 1978, the ASBCA notified USF&G by letter dated January 24, 1978, that its request to prosecute the claims of the principal was denied.

In the litigation in this Court, USF&G seeks a declaration of its rights as to each contract under State, Federal and common law, and under the terms of the Master Surety Agreement herein above referred to.

### III.

#### *The Venue Question*

As to the Hunter Field and Fort Stewart projects no problem of venue exists. While Brasington resides in the Middle District, those two contracts involved construction on sites in the Southern District of Georgia. The bonds were received, opened and awarded here. The alleged defaults by Brasington occurred in this District. He was declared in default by the Corps of Engineers which has its headquarters at Savannah. The performance and payment bonds on which USF&G was surety covered the two projects referred to.

Under 28 U.S.C. § 1391(a), "claims" means the aggregate of operative facts giving rise to rights enforceable in the courts. *Maney v. Ratcliff*, 399 F.Supp. 760 (E.D., Wis.). It has been held that the claim must be deemed to have arisen in the district where the contacts are most significant. *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D., N.Y.). A balancing process of weighing contacts with the forum district has been suggested as the proper test for determining "where the claim arose." *Arnold v. Smith Motor Company, Brookfield, Missouri*, 389 F.Supp. 1020 (N.D., Iowa).

At least two district courts have held that the question of venue is one of substantive law and that therefore in diversity cases the federal courts are required to apply state substantive law. *Ryan v. Glenn*, 52 F.R.D. 185, 192 (N.D., Miss.); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation*, 291 F.Supp. 252 (E.D., Pa.). The Fifth Circuit Court of Appeals has said that "Congress has established the venue of federal courts in diversity of citizenship cases which will prevail over the venue provisions of a state nonresident motorist statute." *Brown v. Pyle*, 310 F.2d 95, 98.[2] To the same effect are *Jaffe v. Dolan*, 264 F.Supp. 845, 848 (E.D., N.Y.) and *Middlesworth v. Kansas City Athletics Div. of Chas. O. Finley*, 293 F.Supp. 296 (S.D., Fla.); 15 Wright & Miller, *Federal Practice and Procedure: Civil* § 3803.

The claim against the Contractor in respect to the Hunter Field and Fort Stewart jobs clearly arose in the Southern District of Georgia within the meaning of 28 U.S.C. § 1391(a). To that extent the motion of

---

1. In this Court's order dated September 22, 1978, it was held that: "These administrative decisions foreclose any right of appeal of the claims in its own name by USF&G. No exception to that rule exists except that of a consent thereto by the contractor. Neither the theory of subrogation nor the conferral (as here) of the right given in the bond or surety agreement, nor on the theory of a 'take-over' of the contract by the surety after default by the contractor varies the rule as established and applied by the Board." The decisions in question are: *Royal Indemnity Company*, 70–2 BCA § 6739

(1970); *Sentry Insurance*, 77 BCA § 12,721 (1977). See also *Zurn Engineers*, July 20, 1978, Board of Contract Appeals Decisions § 13,35, pp. 65,188; 65,194.

2. I agree with that conclusion. In my opinion, Congress intended a comprehensive, not a parochial, approach to federal venue in diversity cases. Unless a uniform rule is established, the language of § 1391(a) "where the claim arose" would vary as the laws and rules of the states differ.

Brasington to dismiss for lack of venue is denied.

■ However, venue stands quite differently in the case of the Fort Benning project. The factors that establish venue in the Southern District are missing as to that contract. Brasington resides in the Middle District where the rehabilitation project was to be performed at Fort Benning under a separate bid and contract. There is very little to connect Brasington with the Southern District in regard to the Fort Benning job. Venue does not lie in a district in which "any part of the claim, however small, arose." *Honda Associates, Inc. v. Nozawa Trading Inc.*, 374 F.Supp. 886 (S.D., N.Y.).

I regret that my ruling as to lack of venue in the Southern District of Georgia will result in a separate action in the Middle District which, because no venue exists in this District, cannot be re-transferred from Columbus to Savannah pursuant to 28 U.S.C. § 1404(a). See *McLouth Steel Corporation v. Jewell Coal and Coke Company, Inc.*, 432 F.Supp. 10 (E.D., Tenn.); *Car-Freshner Corporation v. Auto Aid Manufacturing Corporation*, 438 F.Supp. 82 (N.D., N.Y.).

### IV.

*Standing of USF&G to Participate in Brasington's Appeals Without his Consent*

■ On September 22, 1978, this Court held (see footnote 1, *supra* ) that, under the rulings of ASBCA, the Surety has no right to join in and participate in the appeals before the Board in view of Brasington's persistent refusal to give his consent thereto.

From the beginning, plaintiff has contended that it had the absolute right to join and participate in the appeals by reason of the express terms of the Master Surety Agreement. It provides that USF&G "is authorized and empowered to assert, pursue and prosecute, in its discretion, and at the expense of UNDERSIGNED (in the name of PRINCIPAL, or in the name of SURE-TY), all claim(s) of PRINCIPAL arising or growing out of contract(s) and work done thereunder secured by BOND(S) against . . . any person, government, governmental agency . . ."

In the Opinion of this Court September 22nd it held that the above quoted language confers, under the Board's rulings, no right by a surety to participate in the appeal by a Contractor from the decisions of a Contracting Officer. Thereafter, USF&G moved for a reconsideration of my ruling in that respect. A proposed amendment embodying the theory that the Master Surety Agreement authorized participation by USF&G in the appeals accompanied the motion. On October 31st I denied such motion to reconsider my ruling and refused to allow the amendment proffered by the Surety.

To the Court's surprise, the issue has been resurrected by the latter in its proposed Findings of Fact and Conclusions of Law which were presented following the evidentiary hearing on November 20, 1978. Here and now and for the last time I lay to rest the unquiet ghost of Hamlet's father. Its performance on stage wins no critical acclaim from me.

However, the matter of the standing of USF&G on appeal assumed an entirely different stance at the November hearing. During its course, Brasington consented to the joint and cooperative participation by the Surety in the pending appeals before ASBCA.

I quote in part from the transcript of the hearing held on November 20th.

"THE COURT: I don't care whether you all prosecute the claims, but they're entitled to be represented too, to see that the claim is properly presented, not that you can't do it.

MR. MILLER [counsel for Brasington]: Your Honor, if this Court ruled that way we'd much appreciate that. We feel that that man [Brasington] has a right of representation as well. If the surety is allowed to proceed—if the Court would rule that both of these gentlemen have a right to prosecute the claims." Tr. 29

"THE COURT: . . . I'm not going to turn this over to USF&G alone to prosecute a claim when you've got to, no. But, to the extent of their interests, I think they ought to be given standing up there, and that ought to be recognized. Should be done with your consent.

MR. MILLER: Your Honor, we would consent." Tr. 30

"THE COURT: And, I suppose I could issue a mandatory injunction if necessary to require you to accept a settlement if I thought it was right. All parties would be here. But I want a thorough understanding that you are consenting to the participation of USF&G to the extent that I have outlined.

MR. MILLER: Subject to the approval by this Court of any claimed monies. Is that correct?

THE COURT: Yes." Tr. 36

"MR. MILLER: No, sir, Your Honor. My understanding is he has the right to pursue them in conjunction with Mr. Brasington.

MR. JESSEE: Well, I mean, we are agreeing to that. We are agreeing to that.

THE COURT: Yes, and he's agreed to that.

MR. JESSEE: And, he's agreeing to that." Tr. 37–28

## V.

### Declaratory Relief

As stated, the declaratory feature of this case was heard by the Court on November 20, 1978. Oral and documentary evidence was received and arguments heard as to the proper interpretation, the validity and the effect of the Master Surety Agreement in respect to the respective rights and obligations of the parties.

This Court concludes that the Agreement is a valid and enforceable contract and that there was consideration therefor by the execution and delivery by USF&G of the performance and payment bonds necessary for Brasington to obtain the contracts for modernization and rehabilitation of various buildings at the sites involved.

The Master Surety Agreement cannot confer any right by USF&G to participate in the pending appeals. This Court is bound by the administrative decisions and the practice of the Armed Services Board of Contract Appeals. Nor does such right exist by way of common law subrogation.

However, Brasington has now consented to participation by USF&G in the prosecution of the appeals and ASBCA is authorized to proceed promptly with the hearings in the light of the above decision in respect to consent of the Contractor. The method and procedure for presentation of Brasington's claims is a matter for the Board's determination. It has full authority in that regard and needs no guidance from this Court. Of course, the Federal Defendants are no longer parties.

## VI.

### (A)

#### Findings of Fact

(1) Based upon the stipulation of counsel as to authenticity, Plaintiff's Exhibit No. 1 is a true copy of the Master Surety Agreement signed and executed by Brasington and others, as indemnitors, on July 14, 1973.

(2) Counsel have stipulated that Plaintiff's Exhibits No. 2 (Fort Benning), No. 3 (Hunter Army Air Field), and No. 4 (Fort Stewart) are true copies of three performance and payment bonds which were issued by USF&G in reliance upon and subsequent to the execution of the Master Surety Agreement.

(3) The Agreement referred to is a valid and enforceable Agreement. There was consideration for same by USF&G by duly executing and delivering the performance and payment bonds issued in pursuance thereof.

(4) To date, the Surety has expended more than $1,810,077.46 in settlement of the various suits and demands on the performance and payment bonds by sub-contractors and materialmen growing out of the de-

faults on the Fort Stewart and Hunter Air Field projects which were declared by the Corps of Engineers.

(5) There has been no waiver, modification or change of the terms of the Master Surety Agreement.

(6) Brasington lacks the resources and ability to prosecute the appeals properly. USF&G has a vital interest in the successful presentation of Brasington's claims against the Government. It is fully able to do so.

(7) The Contractor has consistently refused, until November 20, 1978, to consent to the Surety's participation or appearance in its own name in the appeals before ASBCA.

(8) At the evidentiary hearing on that date counsel for Brasington in Open Court and with his client's concurrence, consented to USF&G participating in the appeals.

### (B)

#### *Conclusions of Law*

(1) The motion to dismiss for lack of proper venue as to Brasington is denied in the case of the two projects located in the Southern District of Georgia and is granted in the instance of the Fort Benning rehabilitation job.

(2) USF&G has standing before ASBCA, under its decisions, in view of the consent by Brasington to the Surety joining and participating in the pending appeals.

(3) As to declaratory relief it is unnecessary to reiterate here the conclusions of this Court in Part V of this Opinion.

(4) Any Findings of Fact and Conclusions of Law not expressly dealt with in this Part but which are made in the course of this Opinion are hereby adopted.

#### *Order*

Judgment will be entered in conformity with this Opinion and this Court's Findings of Fact and Conclusions of Law.

Jurisdiction is retained as to any issues of fact (or law) which may arise hereafter between Brasington and USF&G in event of the successful prosecution of the appeals before the Board. Such questions could include entitlement as between the parties, the value of any claim, the manner in which it should be pursued or settled; the recovery by USF&G of costs, expenses and attorney's fees, and such other matters pertinent to final disposition of the case.

The judgment will not constitute a final decision under 28 U.S.C. § 1291.