**FRONTIER FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**NATIONAL HOTEL CORPORATION, a Florida Corporation, Universal Hotels, Inc., an Ohio Corporation, David Williams, Noreen Sozio, David W. Bartlett and Dan Pavelka, Defendants.**

Civ. No. 86–C–1013G.

United States District Court, D. Utah, C.D.

Nov. 4, 1987.

Mark A. Larsen, Salt Lake City, Utah, for plaintiff.

Bryce E. Roe, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on August 25, 1987 pursuant to defendants' Motions to Dismiss. David Williams (Williams) and National Hotel Corporation (National) were represented by Bryce E. Roe. Frontier Federal Savings & Loan Association (Frontier) was represented by Mark A. Larsen. The parties submitted memorandums and presented oral argument, after which the court took the matter under advisement. On September 3, 1987 National filed a petition for relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Florida. Accordingly, proceedings in this court relative to National were stayed pursuant to 11 U.S.C. § 362. Being now fully advised with respect to Williams's motion, the court sets forth its Memorandum Decision and Order.

## FACTS

This action arises generally out of a loan of $14,200,000.00 and a related contract for the sale of real property. Since neither party has offered affidavits in connection with this motion to dismiss, the court relies on factual allegations of the complaint set forth below, accepting them as true. *Behagen v. Amateur Basketball Ass'n.*, 744 F.2d 731, 733 (10th Cir.1984).

*Parties*

The plaintiff, Frontier, is a federally chartered savings and loan with its principal place of business in Tulsa, Oklahoma. National is a Florida corporation. Defendant Universal Hotels, Inc. (Universal) is an Ohio corporation and Williams, president of both corporations, is a resident of Florida.

*Background*

The transaction between Frontier and the defendants was quite complex, involving mutual obligations reflected in several documents. National and Universal applied for a loan from Frontier by completing a Commercial Loan Application ("Application"), a copy of which was attached to Frontier's First Amended Complaint. The Application shows National as the borrower, Universal as the guarantor, and Williams as president of both corporations. Two pieces of property secured the loan: (1) the Heart of Palm Beach Hotel, located in Palm Beach Florida, and (2) the North Adams Inn, located in North Adams, Massachusetts. In connection with the Application, National, Universal and Williams submitted financial statements for previous years to Frontier.

In July 1986 most of the documents constituting and memorializing the transaction were executed. On July 2, 1986 Frontier, National, and Universal entered into a

Loan Commitment Agreement[1] ("Agreement"). The Agreement provided that Frontier would loan $14,200,000.00 to National, and that National, among other things, would enter into the Park City Purchase Reserve Agreement[2] ("Park City Agreement"). The Park City Agreement, which was executed on July 18, provided that National would buy certain hotel property located in Park City, Utah known as the "Radisson" from Frontier for $6,000,000.00. Closing on the sale was to be December 16, 1986 in Park City, Utah. The Park City Agreement also provided that simultaneous with the closing of the loan, National would deposit $1,700,000.00 in an interest bearing account with Frontier, and that prior to January 1, 1987 National would deposit an additional amount of not less than $400,000.00. Under the Park City Agreement, these funds were to be disbursed only for certain purposes in connection with the Radisson Hotel. National was to make "draw requests" which Frontier was to allow after determining that the requests were in compliance with the Park City Agreement. Finally, under the Park City Agreement, National was to "commence diligently to complete construction of [the Radisson] in accordance with the plans and specifications thereof."

*Causes of Action*

Frontier's First Amended Complaint contains eight counts, four of which contain allegations regarding Williams. In Count Five it is alleged that Williams submitted financial statements to Frontier in connection with the Application, and that Williams represented his intent to perform under the terms of the described transaction documents. Frontier alleges that the financial statements and these representations were false when made, that they were made with intent to deceive, and that Frontier reasonably relied on them to its detriment in that the representations caused it to make an under collateralized loan to National.

In Count Six it is alleged that Williams made false representations to Frontier in

order to obtain draws under the Park City Agreement. These representations essentially were that National would purchase furniture, fixtures, and equipment for the Radisson. Frontier alleges that as a result of these representations it advanced $1,500,000.00 to National which has not been used to purchase furniture, fixtures, and equipment, or in completing the Radisson Hotel, thus "destroying Frontier's Utah-based security for the advances and eliminating Frontier's ability to collect for those advances."

In Count Seven it is alleged that Williams and others conspired to obtain a loan from Frontier, and that Williams, from the beginning, intended to divert the $14,200,000.00 to his own personal use, in violation of the terms of agreements requiring application of the funds to other purposes, including the purchase of property located in the State of Utah in which Frontier would have a security interest. In Count Eight it is set forth that Williams received property from National while National was insolvent, without paying fair consideration. Frontier claims that as a result it is entitled to have the conveyances made to Williams set aside to the extent necessary to satisfy Frontier's claims.

ANALYSIS

Williams has moved the court to dismiss Frontier's complaint against him on three principal grounds: (1) lack of personal jurisdiction; (2) improper venue, 28 U.S.C. § 1391(a); and, (3) inconvenience of the forum, 28 U.S.C. § 1404. The court will discuss each ground in turn.

I. *Personal Jurisdiction*

In a diversity action a federal court must look to the law of the forum state to determine the issue of personal jurisdiction. *See Yarbrough v. Elmer Bunker & Assoc.,* 669 F.2d 614 (10th Cir.1982). Although the plaintiff bears the burden of establishing jurisdiction over the defendant, the plain-

---

1. The Agreement by its terms was to be governed by the laws of the State of Oklahoma.

2. The Park City Agreement by its own terms is to be "construed in accordance with the law of the State of Utah."

tiff need only make a prima facie showing when a motion to dismiss for lack of jurisdiction is presented. *Behagen,* 744 F.2d at 733. Thus, at this stage of the proceedings the plaintiff's burden is relatively light, and the court's inquiry is not finally determinative of the matter. The burden remains on the plaintiff to prove at trial by a preponderance of the evidence that jurisdiction is proper. *Milligan v. Anderson,* 522 F.2d 1202, 1207 (10th Cir.1975).

### A. General and Specific Jurisdiction

In this case Frontier argues that Williams is subject to Utah's "general" and to its "specific" jurisdiction. In *Abbott G.M. Diesel v. Piper Aircraft,* 578 P.2d 850 (Utah 1978), the Utah Supreme Court explained the distinction between general and specific jurisdiction as follows:

> General personal jurisdiction is the concept reflected in a doing business statute, which requires substantial and continuous local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only minimum local contacts.... Where a defendant's forum-state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only *on claims arising out of* the defendant's forum-state activity (long-arm or "transaction of business" concept).

*Id.* at 853 n. 6 (quoting Strachan, *In Personam Jurisdiction in Utah,* 1977 Utah L.Rev. 235, 264, 253–54).

### B. General Jurisdiction in This Case

■ Frontier asserts that Williams has engaged in substantial and continued activity in Utah of such a nature that he may be considered generally present in Utah and thus amenable to suit in this jurisdiction for any purpose. However, this court concludes on the basis of the limited record before it that the activities Frontier has alleged are not of such a substantial and continuous nature as to render Williams generally present in the state of Utah.[3] *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Mallory Engineering, Inc. v. Ted R. Brown & Assoc., Inc.,* 618 P.2d 1004, 1006 (Utah 1980).

### C. Specific Jurisdiction in This Case

■ Frontier also asserts that this court has specific jurisdiction over Williams because of certain minimum contacts he had with this state. This court engages in a three step analysis in cases asserting special jurisdiction under Utah's long-arm statute. *See Nova Mud Corp. v. Fletcher,* 648 F.Supp. 1123, 1125, 1126 (D. Utah 1986); Strachan, *In Personam Jurisdiction in Utah,* 1977 Utah L.Rev. 235, 251–63.

#### 1. Acts Submitting Persons to Jurisdiction

The first step in a long-arm jurisdictional analysis is to determine whether one of the statute's specifically enumerated acts is met under the facts of the case in question. Utah's statute provides, in pertinent part, as follows:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the follow-

---

**3.** Although the decisions authorizing personal jurisdiction over nonresident defendants "doing business" in Utah are sparse, especially in the period after enactment of Utah's long-arm statute, Utah appears to require solicitation of business within the state *plus* some other factor such as maintaining a warehouse or making deliveries. *See, e.g., Dykes v. Reliable Furniture & Carpet,* 3 Utah 2d 34, 277 P.2d 969 (1954). In fact, Utah Code Ann. § 16–10–102 (1987) specifically enumerates activities which *do not amount* to transacting business in this state, including, effecting sales through independent contractors, soliciting or procuring orders, creating evidences of indebtedness, transacting business in interstate commerce, conducting an isolated transaction completed within a period of 30 days, or acquiring in transactions outside Utah or in interstate commerce conditional sale contracts or debts secured by mortgages or liens on real or personal property in Utah. Of the allegations against Williams which have possible Utah connection, none is sufficient to allow assertion of general jurisdiction under these guidelines.

ing enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising from:

    (1) the transaction of any business within the state;

    (2) contracting to supply services or goods in this state;

    (3) the causing of any injury within this state whether tortious or by breach of warranty;

    (4) the ownership, use, or possession of any real estate situated in this state;

    (5) contracting to insure any person, property, or risk located within this state at the time of contracting....

Utah Code Ann. § 78–27–24 (1987).

The Utah legislature set forth a very broad and far reaching purpose in enacting the long-arm statute, stating that its provisions "should be applied so as to assert jurisdiction over non-resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." [4] In construing this statute, the Utah Supreme Court has noted that "[c]onsistent with this policy ... the protection afforded by Utah court must be extended to the fullest extent allowed by due process of law." *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985) (citing *Brown v. Carnes Corp.*, 611 P.2d 378, 380 (Utah 1980)). With the legislature's stated purpose in mind, this court holds that the statute is broad enough to reach Williams in this case.

Frontier alleges that Williams has transacted business within this state, contracted to supply goods and services in this state, and caused tortious injury within this state.

The Utah statute defines "transaction of business within this state" to mean "activities of a non-resident person ... in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23(2). This definition is very broad in scope, and defendant Williams very well may have satisfied the Utah statute by transacting business here. Also, Williams may have satisfied the statute by having contracted to supply goods and services in this state. Without deciding or relying on those sections, however,[5] the court finds that plaintiff has made out a prima facie case for jurisdiction under § 78–27–24(3) for causing tortious injury in this state.[6]

This court previously has held that the language of 78–27–24(3) requires only that the "injury" occur in this state, and that the act causing the injury may occur elsewhere. *See Berrett v. Life Insurance Co.*, 623 F.Supp. 946, 950 (D. Utah 1985). Given Utah's declared policy of broad, liberal construction, and the limited showing required at present, this court finds, for purposes of this motion, that National has caused tortious inquiry within this state, subjecting it to jurisdiction under Utah's long-arm statute. Frontier's allegations clearly show that Frontier was injured with respect to its Utah property. That is, that Frontier was injured in Utah. Frontier alleges that it lost its anticipated security priority, and that the Utah property itself was injured. Further, Frontier alleges that, as a result of Williams's fraudulent conduct, Frontier was delayed in opening the Radisson for business during the ski season, thereby losing valuable revenue from its Utah prop-

---

4. Utah Code Ann. § 78–27–22.

5. Asserting jurisdiction over Williams under sections 78–27–24(1), –24(2), and –24(4) is problematic at this stage in the litigation in that Frontier has not alleged that Williams *himself* performed any of the acts listed in those sections. The contract for the purchase of the Radisson, and to supply goods and services was between Frontier and *National.* There appears to be some dispute over whether National is a sham or alter-ego for Williams. Given the limited nature of the showing plaintiffs must make at this stage of the litigation, the court does not find it necessary to reach or resolve these issues.

However, as previously noted, the plaintiff must prove at trial by a preponderance of evidence that jurisdiction is proper. Also, at trial inquiry into the viability of National as a bona fide entity likely will be necessary.

6. In essence, Frontier alleges that Williams defrauded it. In the civil context, a cause of action for fraud is a tort. Section 78–27–24(3) provides that a defendant is subject to jurisdiction for claims arising out of "the causing of any injury within this state whether tortious or by breach of warranty."

erty. Williams caused these Utah-located injuries.

### 2. The Nexus Requirement

The second step in the special jurisdictional analysis under Utah's long arm statute is to determine whether plaintiff's claim *arises out of* defendant's performance of one of the statute's specifically enumerated acts. This requirement has both statutory and due process aspects. Under the Utah statute a defendant is subject to jurisdiction only on claims "arising from" the enumerated acts alleged. Utah Code Ann. §§ 78–27–24, 78–27–26 (1987). If the plaintiff's claim does not arise out of the non-resident's statutorily described activity, the long-arm statute does not apply. This statutory requirement is dictated by similar federal due process concerns. *See Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958). Having determined for purposes of this motion that Williams caused tortious injury in Utah, it is clear that the required nexus also is shown.

### 3. Due Process Limitations

The third step in the jurisdictional analysis is to determine whether the assertion of jurisdiction is consistent with federal due process limitations. The basic limitation was described most recently in *Asahi Metal Industry v. Superior Court:* " '[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established "minimum contacts" in the forum state.' " —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). To establish this requirement it is essential that the plaintiff show "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240. Further, it is clear that the contacts must be shown proximately to result from "actions by the defendant *him-*

*self* that create a 'substantial connection' with the forum state." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

The Supreme Court has held that *foreseeability of causing injury* in another state is not alone a sufficient benchmark for exercising personal jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 295, 100 S.Ct. 559, 565–66, 566, 62 L.Ed.2d 490 (1980). Rather, the purposeful availment requirement ensures that a defendant will be subjected to suit only in those instances where he should reasonably anticipate out-of-state litigation. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. Accordingly, due process analysis requires "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567 (1980)).

In this case, Williams and National deliberately have reached out beyond Florida, and negotiated with an Oklahoma savings and loan to buy property in Utah. By his allegedly intentional and fraudulent conduct, Williams purposefully has acted to derive benefit from property located in Utah. This dispute grows directly out of a contract that had substantial connection with Utah, and out of Williams's fraudulent conduct in connection with that and other agreements. Williams's conduct, as alleged, was not merely untargeted negligence. Rather, Williams intentionally made misrepresentations with potentially devastating impact on Frontier. Williams's misrepresentations expressly were aimed at Utah, and Williams knew that the brunt of the injury to Frontier would be with respect to the Utah property. Having engaged in such conduct, Williams reasonably must have anticipated being haled into court here.

Once the purposeful availment requirement is met, other factors come into play. As the Supreme Court recently noted,

Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S., [310] at 320, 66 S.Ct., [154] at 160 [90 L.Ed. 95 (1945)]. Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 292, 100 S.Ct., at 564.

*Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85.

In evaluating the burden on the defendant of litigating in a foreign forum, courts first consider the "quality and nature" of the defendant's contacts with the forum. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40. Where the defendant has substantial relations with the forum, "he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable. Most such considerations may be accommodated through means short of finding jurisdiction unconstitutional." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185. The court should focus on the economic realities of the relationship between the defendant and the forum. In this case, as a result of defendant's fraudulent activities, Frontier foreclosed on property located in Utah, and established loan accounts and funded them here. Frontier made a substantial financial commitment to Utah residents and to property in Utah. Williams and his companies were essential to fulfilling that commitment.

Williams has made no showing that litigating in Utah presents any real hardship to him. The amount in controversy here is substantial compared with the cost of litigation. Thus, the possibility of default is minimal. *See Synergetics,* 701 P.2d at 1111; *Mallory Engineering,* 618 P.2d at 1009. From the allegations of the pleadings there is also evidence that Williams has been engaged in interstate business transactions for some time, and that he is thus acquainted with, and able to bear the burden of, out-of-state litigation.

Further, the interest of the forum, on balance, is great. Although the non-residency of the plaintiff considerably diminishes Utah's legitimate interest in the dispute, *see Asahi Metal,* 107 S.Ct. at 1034, Frontier alleges that Williams engaged in tortious conduct. In *Keeton v. Hustler Magazine, Inc.,* the Supreme Court stated that,

"A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort."

465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (quoting *Leeper v. Leeper,* 114 N.H. 294, 298, 319 A.2d 626, 629 (1974); *Restatement (Second) of Conflict of Laws,* § 36, comment c (1971)). The Supreme Court noted that with respect to libel actions, "[t]his interest extends to ... actions brought by non-residents. False statements of fact harm both the subject of the falsehood and the readers of the statement." *Id.* This court sees no reason to distinguish this case from *Keeton.* Here it is alleged that Williams, using property in Utah, perpetrated a fraud on Frontier. Utah's interest in remedying fraud connected with Utah is great.

Given the quality of Williams's Utah contacts, his ability to bear any burden associated with litigating here, Utah's great interest in this litigation, and the lack of showing of any other circumstances rendering litigation in this forum contrary to notions of "fair play and substantial justice," this court concludes that exercising

jurisdiction over Williams under the Utah long-arm statute comports with federal due process requirements.

## II. *Venue*

Unlike personal jurisdiction, in a diversity action venue remains dependent on federal law. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). In this case Williams argues that venue may not properly be laid in Utah under 28 U.S.C. § 1391(a) because the claim did not arise in Utah, and neither the plaintiff nor the defendants reside here. Prior to 1963 the general venue statute determined venue solely on the basis of residency. However, in 1966 Congress added the "claim arose" language to § 1391(a) and § 1391(b). The term "claim" in § 1391(a) has been held to refer to the "aggregate of operative facts giving rise to rights enforceable in the courts". *United States Fidelity & Guaranty Co. v. Alexander*, 463 F.Supp. 687, 691 (S.D.Ga.1979); *Maney v. Ratcliff*, 399 F.Supp. 760, 766 (E.D.Wis.1975).

■ The Tenth Circuit has not, as yet, ruled on the proper test of where a claim arises for purposes of § 1391(a). In general, federal courts have applied one of three tests: (1) the place of injury; (2) the place where the weight of contacts occurred; or, (3) the place where a substantial part of the events giving rise to the claim occurred. *See Hodson v. A. H. Robins Co.*, 528 F.Supp. 809, 813 (E.D.Va.1981); 15 C. Wright, A. Miller & E. Cooper, Federal Practices and Procedure § 3806 (1986). Under the place of injury test, venue is proper in the district in which plaintiff suffered his injuries, or where the effect of the defendant's wrongful act occurred. *See Hodson*, 528 F.Supp. at 813; *Sherman v. Moore*, 86 F.R.D. 471 (S.D.N.Y.1980);

*Sheffield v. Texas*, 411 F.Supp. 709 (N.D. Tex.1976). The weight of the contacts test determines venue based on an evaluation of the defendant's contacts with the various districts involved. Under this test venue is proper only in the district "where the contacts weigh most heavily." *Hodson*, 528 F.Supp. 843 (quoting *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968)). This test has frequently been applied in antitrust cases. The third, or "substantial part" test was originally proposed by the American Law Institute. Under this test venue is proper in a district in which "a substantial part of the events or omissions giving rise to the claim occurred." 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3806, at 47 (1986) (quoting American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, Official Draft 1969, § 1303(a)(1)).[7]

■ In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court gave lower courts some guidance on how to interpret the "claim arose" language of § 1391(b).[8] The Supreme Court did not, however, specifically endorse or reject any of the above tests. *Id.* at 183–86, 99 S.Ct. at 2717. It stated, however, that "it is absolutely clear that Congress did not intend to ... give [the plaintiff] an unfettered choice among a host of different districts."[9] The court noted that only in unusual cases would it not be clear that the claim arose in only one specific district. However, the court also stated that,

in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately

---

7. In this case claims against Williams may be said to have arisen in Utah at least under the place of injury test, and the substantial part test. Further, at this stage of the litigation it appears the weight of the contacts test might also be met.

8. It is likely that the claim arose language of § 1391(a) would be construed similarly to the same language in § 1391(b). Accordingly, the

Supreme Court's discussion of § 1391(b) in *Leroy* is directly relevant to this court's construction of § 1391(a).

9. *Id.* at 185, 99 S.Ct. at 2717. The Supreme Court also noted that, "in most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at 183–84, 99 S.Ct. at 2716.

equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim.

443 U.S. at 185, 99 S.Ct. at 2717.

This court regards the case at bar as an "unusual case," in which it is not clear that there is only one obvious locus. Oklahoma will provide evidence and witnesses with regard to the parties' negotiations, but Utah will provide evidence and witnesses with regard to damages. In terms of the availability of witnesses, the accessibility of other relevant evidence and the convenience to Williams, Utah and Oklahoma, with approximately equal plausibility, may be assigned as the locus of the claim. In such circumstances, a plaintiff's choice of one of the plausible forums is proper under *Leroy.* Further, in comparing the weight of the various factors, the balance appears be toward Utah. As the court previously has noted, Frontier's claims sound in tort. Frontier alleges that Williams submitted false financial statements, forged checks, conspired with others to defraud it, and received fraudulent transfers. The funds Williams diverted were intended to be used in Utah. Frontier suffered its injuries and felt the effect of Williams' wrongful acts with respect to its Utah property. Accordingly, the court holds that venue is properly laid in Utah under 28 U.S.C. § 1391(a).

### III. *Forum Non Conveniens and Comity*

Though venue may be proper in this district, the court in the interest of justice nevertheless may transfer the case to another district where it might have been brought "for the convenience of the parties and the witnesses." 28 U.S.C. § 1404(a). Williams has moved under § 1404(a) that the case be transferred to Florida. This court previously has noted that a change of venue under § 1404(a) is discretionary with the court. *Brown v. Washoe Housing Authority,* 625 F.Supp. 595, 602 (D.Utah 1985). When a party moves for transfer under § 1404(a) the presumption is that plaintiff has chosen a proper forum. The policy of the courts,

therefore, is to give substantial deference to the plaintiff's selection. The defendant's burden is heavy, and unless the circumstances of the case weigh heavily in favor of the transfer, the plaintiff's choice should not be disturbed.

In this case the court concludes that the circumstances do not weigh heavily in favor of transfer. Williams notes only that he would be required to defend himself over a thousand miles from where he resides, and that the claim could have been brought in Florida. Frontier, however, notes that the witnesses in this case are not closer to Florida than they are to Utah. Some witnesses and records are located in Utah. The court is not convinced that it should exercise its discretion to upset Frontier's choice of forum in this case.

Williams also raises comity and judicial economy as arguments in favor of dismissing this case. In view of the above-described circumstances this court concludes it would be unwise to refuse to entertain the matter based on these factors alone. *See Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942).

Based upon the foregoing, Williams's Motion to Dismiss is denied.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

IT IS SO ORDERED.