**Keith B. ROMNEY, Keith B. Romney & Associates, Plaintiffs,**

v.

**ST. JOHN VIRGIN GRAND VILLAS ASSOCIATES; BT Corporation, a Connecticut corporation; Allen Williams Corp., an Ohio corporation; Perfect Circle Investments, Inc., an Ohio corporation; Does I–X, Defendants.**

Civ. No. 89–C–0330–S.

United States District Court,
D. Utah, C.D.

April 3, 1990.

958

Mitchell R. Jensen, Salt Lake City, Utah, for plaintiffs.

Mark M. Bettilyon, Randy L. Dryer, Salt Lake City, Utah, for defendants.

## RULING

SAM, District Judge.

This action is before the court on the objection of plaintiffs Keith Romney Associates (KRA) and Keith Romney to the magistrate's July 25, 1989 report and recommendation (R & R) granting the motion to dismiss for lack of personal jurisdiction over defendants St. John Virgin Grand Villas Associates, Allen–Williams Corporation (AW), Perfect Circle Investments, Inc. (PC). The defendants will be referred to collectively as "GV."

In this action KRA alleges GV breached an employment agreement under which GV agreed to pay KRA a fee for arranging financing for GV's project in the Virgin Islands. The instant motion challenges this court's jurisdiction over GV, a Virgin Island partnership, which includes joint venture partners and part-owners AW and PC, both Ohio-based firms. Upon review of the parties' memoranda and applicable case law, the court is disposed to deny the defendants' motion to dismiss.

### I. *Facts*

GV will not stipulate to the facts KRA alleges; however, because GV does not ex-pressly dispute these facts, the court considers them a sufficient basis for this decision.

KRA is a real estate development company domiciled and having its principal place of business in Salt Lake City. In March 1988 Harold Williams, of AW, telephoned[1] Keith Romney in Salt Lake; included in the call were David Allen, of AW (calling from Ohio), and Bill Morgan, counsel for AW (calling from Kansas). AW's purpose for the telephone conference was to contract with Romney to provide consulting services for GV. After several negotiation sessions by telephone, the parties agreed on the terms of KRA's employment contract which were essentially that, in addition to a retainer, GV promised to pay KRA a 1% fee for arranging permanent, end-loan, receivable financing for a development project in the Virgin Islands. KRA prepared and signed the contract in Utah, then sent it to Ohio where AW signed and returned it with KRA's retainer check.

In the months following the initial negotiations, KRA alleges its staff provided services to GV by telephone, including "interface and discussions with lenders, financing brokers, marketing and sales people, attorneys, etc." Keith Romney Affidavit at 3. KRA further alleges that one of the telephone conferences involved lengthy discussion of financing issues among Harold Williams, Keith Romney and a lender. GV requested that KRA seek financing from the Government Employees Insurance Company (GEICO), which KRA was able to do through GEICO's Denver office after "intensive" work with the GEICO staff. *Id.* KRA says it performed "crucial" services for GV in the following areas: "construction and development financing, end loan financing, marketing and sales, legal documentation, securities ..., management and operation, design and construction, etc." *Id.* KRA's "major service" to GV was to prepare a "thorough, detailed analysis of all ... the documentation governing the entire project," and to review the analy-

---

**1.** Although the record does not indicate where Harold Williams called from, the court infers it was either Ohio or the Virgin Islands.

sis from management, securities and sales aspects. *Id.* at 3, 4. In 1988 Keith Romney and his executive vice-president made three trips to the Virgin Islands during which they provided substantial input to GV's development, marketing and sales executives.

KRA alleges that the bulk of its work (preparation of all documents and marketing plans) was performed in its Utah office. Throughout the course of their dealings, the parties maintained frequent contact by telephone, mail and Federal Express among Romney's office in Salt Lake City and GV's offices in the Virgin Islands, Ohio and Kansas.

In its complaint KRA alleges it substantially performed the contract but GV failed to pay the promised 1% fee. GV moved to dismiss on the ground that GV's Utah contacts are insufficient to invoke this court's jurisdiction. The magistrate granted GV's motion, holding GV could not reasonably be expected to be haled into court in Utah. KRA objects that the magistrate overlooked facts relevant to GV's minimum contacts with Utah and that he misapplied *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This court determines the magistrate reached the wrong conclusion under *Burger King*.

## II. *Discussion*

GV bases its motion on the undisputed facts that it has not transacted business in Utah and has no offices, agents, personnel, property, bank accounts or telephone listings in this state. Further, no GV repre-

sentatives ever traveled to Utah regarding the KRA contract. Specifically, GV states:

> Any acts done by plaintiffs regarding the Agreement were purely for the benefit of the St. John Virgin Grand Villas, and the location of plaintiffs' offices in any given state outside the U.S. Virgin Islands is incidental. If as alleged, plaintiff elected to perform certain work outside the Virgin Islands, such acts were unilateral on his part.

KRA counters by citing *Burger King*, 471 U.S. at 473–74, 105 S.Ct. at 2182–83, for the proposition that where GV reached out to do business with KRA, GV purposefully availed itself of the privilege of doing business in Utah and should have reasonably anticipated being haled into court here.

■ In *Frontier Federal Sav. & Loan v. National Hotel Corp.*, 675 F.Supp. 1293 (D.Utah 1987), the court set out a three-step analysis for cases asserting specific jurisdiction[2] under Utah's long-arm statute. The first step is to determine whether the facts meet one of the statute's specifically enumerated acts. Utah Code Ann. § 78–27–24 (1987) reads in part:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> (1) the transacting of any business within this state; ...

The statute provides that the protection of the Utah courts " 'must be extended to the

---

**2.** GV argues the jurisdictional test is whether GV is "doing business in the State in a real or substantive sense." *Hill v. Zale Corp.*, 25 Utah 2d 357, 482 P.2d 332, 334 (1971). This court concludes the *Hill* test relates primarily to general rather than specific jurisdiction. The jurisdiction asserted here is specific, that is, the court's minimum contacts analysis must be confined to those contacts related to this cause of action. *See Frontier Federal*, 675 F.Supp. at 1296; *Abbott G.M. Diesel v. Piper Aircraft*, 578 P.2d 850, 853 n. 6 (Utah 1978); Strachan, *In Personam Jurisdiction in Utah*, 1977 Utah L.Rev. 235, 253–54, 264. In *Abbott*, 578 P.2d at 853 n. 6, the Utah Supreme Court distinguished general from specific jurisdiction:

> General personal jurisdiction is the concept reflected in a doing business statute, which requires substantial and continuous local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only minimum local contacts.... Where a defendant's forum-state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only *on claims arising out of* the defendant's forum-state activity (long-arm or 'transaction of business concept').
>
> (Emphasis in original.)

fullest extent allowed by due process of law.'" *Frontier Federal,* 675 F.Supp. at 1297 (quoting *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985) (citing *Brown v. Carnes Corp.,* 611 P.2d 378, 380 (Utah 1980))). A defendant's acts will come within the statute if an injury should occur in the state even though the act causing the injury might occur elsewhere. *Frontier Federal,* 675 F.Supp. at 1297; *see Berrett v. Life Ins. Co.,* 623 F.Supp. 946, 950 (D.Utah 1985).

The second step is to determine whether the "plaintiff's claim arises out of the defendant's performance of one of the statute's specifically enumerated acts." *Frontier Federal,* 675 F.Supp. at 1297–98.

The third step is to "determine whether the assertion of jurisdiction is consistent with federal due process limitations." *Id.* " ' "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum state." ' " *Id.* (quoting *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–32, 94 L.Ed.2d 92 (1987) (quoting *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945))).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181 (quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159–60). "In judging minimum contacts, a court properly focuses on the 'relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). "The relationship between the defendant and the forum must be such that it is 'reasonable ... to require the corporation to defend the particular

suit which is brought there.' " *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158–59). "The 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (quoting *Hanson v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235–36, 2 L.Ed.2d 1283 (1958)).

■ The forum does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over parties who " 'reach out beyond one state and create continuing relationships and obligations with citizens of another state.' " *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)); *see also McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957). *Burger King* notes several reasons why a forum legitimately may exercise personal jurisdiction over a "nonresident who 'purposefully directs' his activities toward forum residents":

A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King,* 471 U.S. at 473–74, 105 S.Ct. at 2182–83 (citations omitted). The "constitutional touchstone," *id.* at 474, 105 S.Ct. at 2183, remains whether the defendant "should reasonably anticipate being haled into court" in the forum State, *id.* (quoting *World-wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566), because it has purposefully availed itself "of the privilege of conducting activities within the ... State, thus invoking the benefits and protections of its laws," *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240).

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
>
> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State....

*Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (emphasis in original) (footnote and citations omitted).

If the court should decide the defendant has purposefully established minimum contacts with the forum State, the defendant has the burden to "present a compelling case," *id.* at 477, 105 S.Ct. at 2185, that other factors make jurisdiction unreasonable. Such factors include: " 'the burden

on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).

■ This court determines GV's activities within Utah meet the three-prong *Frontier Federal* test for specific jurisdiction. 675 F.Supp. at 1297–98. First, these facts come under the Utah long-arm statute in that GV transacted business in the state and allegedly caused an injury by breach of contract. Second, the claim arose from GV's transaction of business and alleged breach of contract. Third, GV should have reasonably anticipated being haled into court in Utah because it "purposefully availed itself of the privilege of conducting activities" within Utah, "thus invoking the benefits and protections" of Utah law. *Burger King,* 471 U.S. at 473–74, 105 S.Ct. at 2182–83 (citations omitted).

The court considers this the archetypical case involving a nonresident that reached out, deliberately engaged in significant activities within a state and created continuing obligations between it and a resident of the state.[3] It is undisputed GV initiated contact with and paid Romney a retainer for consultation and financial services, most of which were performed in Romney's Salt Lake office. The parties' employment contract negotiations were conducted by telephone calls to Romney in Salt Lake where Romney ultimately drafted and signed the contract. Romney provided GV services from Romney's Salt Lake office via telephone, Federal Express and mail. Clearly GV's alleged breach of contract would injure Romney in Utah.

It is of no moment that GV representatives never visited Utah, *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, or that the development project is outside the state,

**3.** The principal authority on which GV relies, *Union Ski Company v. Union Plastics Corporation,* 548 P.2d 1257 (Utah 1976), is not helpful

because the *Union Ski* plaintiff initiated the defendant's Utah contacts.

see *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Frontier Federal*, 675 F.Supp. at 1297; *Berrett*, 623 F.Supp. at 950. Examination of the relationship among GV, Utah and this action, *see Keeton*, 465 U.S. at 775, 104 S.Ct. at 1478–79; *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2579–80, convinces the court that exercise of specific jurisdiction over GV meets due process standards for reasonability, *see World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65; *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 158–59. The court's conclusion comports with the Supreme Court's "effects" rule pronounced in *Calder*, which is that

> when [a nonresident defendant's] intentional actions are expressly aimed at the forum state, and the [defendant] knows that the brunt of the injury will be felt by a particular resident in the forum, the [defendant] must reasonably anticipate being haled into court there to answer for its ... actions. This holds true even if the [defendant's] conduct occurs in a state other than the forum state.

*Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir.1988) (citing *Calder*, 465 U.S. at 790–91, 104 S.Ct. at 1487–88). GV not only intentionally aimed its actions at Utah but knew the brunt of any breach of contract would be felt by Romney in this state.

*Southmark* exemplifies fact scenarios that do not fall within the "effects" rule. There the plaintiff, Southmark, was a Texas corporation that sued a Virginia corporation, USLICO, alleging USLICO tortiously interfered with Southmark's purchase of stock from third-parties, none of which were Texas residents. The agreement at issue was reached in Atlanta and New York. Southmark's sole ground for claiming USLICO should be subject to suit in Texas was that Southmark resided and hence would be injured there. The Fifth Circuit rejected that argument calling Southmark's Texas residence a mere "fortuity." *Id.* at 773; *see Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1478; and *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568) ("fortuitous" contacts are constitutionally insufficient). *Southmark* (which involves a nonforum sale) differs substantially from the instant case (which involves a forum employment contract) in that GV intentionally contracted with Romney knowing breach of the contract would injure Romney in Utah where Romney not only resided but performed the majority of its work for GV. The court considers Romney's alleged injury in the very class of injuries for which the Utah long-arm statute was created; consequently this state has a "manifest interest" in providing its resident, Romney, a convenient forum for redressing injuries inflicted by GV, an out-of-state actor. *See Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182. Where GV "purposefully derive[d] benefit" from its interstate activities, it would be unfair to allow it to escape having to account in Utah "for consequences that arise proximately" from its "interstate obligations that have been voluntarily assumed." *See id.* at 473–74, 105 S.Ct. at 2183. GV has purposefully established minimum contacts with Utah; therefore, the court's exercise of specific jurisdiction over GV is constitutionally permissible.

■ Having found sufficient minimum contacts, the court must decide whether GV presents a compelling case that other factors make jurisdiction unreasonable. *See id.* at 477, 105 S.Ct. at 2184–85. The sole factor GV asserts is that it would be burdensome for GV to try the case in this forum. That factor should be given relatively little weight because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *See id.* at 474, 105 S.Ct. at 2183. Certainly Romney would suffer substantially the same hardship if it were required to litigate this action out of state. The court considers Utah's interest in adjudicating the dispute and Romney's interest obtaining the most efficient resolution of greater weight than GV's inconvenience. *See id.; World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65.

III. *Conclusion*

GV's motion to dismiss is denied.