Sherrell K. BERRETT and University Financial Concepts, Inc., a Utah corporation, Plaintiffs,

v.

LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, Richard Lee, Douglas Neill and John Lancaster, Defendants.

Civ. No. C85–669G.

United States District Court, D. Utah, C.D.

Dec. 4, 1985.

Kent Murdock, Thomas Kay, Salt Lake City, Utah, for plaintiffs.

Michael L. Deamer, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on October 3, 1985, on defendants' Motions to Dismiss. Kent Murdock and Thomas L. Kay appeared on behalf of all defendants, and Michael L. Deamer appeared on behalf of all plaintiffs. The issues were thoroughly briefed, counsel presented extensive oral argument, and the Court took the matter under advisement.

### FACTS

Plaintiff Berrett and his insurance agency, University Financial Concepts, Inc., ("UFC") entered into an agency agreement with defendant Life Insurance Company of the Southwest ("Southwest") which authorized plaintiffs to write insurance policies for Southwest. The agency agreement contained a so-called "forum selection" clause which provided as follows:

> Situs. This agreement is made and performable in Dallas, Dallas County, Texas. The parties agree that any action at law or in equity hereunder shall be brought in Dallas County, Texas....

Pursuant to the said agency agreement, plaintiffs sold numerous Southwest insurance policies to residents of Utah. Southwest became aware of alleged wrongful conduct on the part of plaintiffs in connection with sales in Utah, whereupon certain employees of Southwest in Texas telephonically contacted various Southwest policyholders in Utah. In substance and effect, the policyholders were told that plaintiffs no longer were authorized to sell Southwest insurance, and were encouraged to discontinue relations with plaintiffs. Plaintiffs claim that Southwest personnel also telephoned the Utah Insurance Commission and made false representations concerning plaintiffs.

Plaintiffs brought this action for breach of the agency agreement and failure to pay commissions and renewal commissions. The action also contains counts alleging

tortious interference with contractual relations and defamation based upon the telephone calls placed from Texas to Utah by three Southwest personnel. Jurisdiction is based upon diversity of citizenship. Service of process upon the individual defendants who are residents of Texas was effected pursuant to Utah's "long arm" statute.

The issues here presented are:

(1) Is the forum selection clause here applicable and enforceable against the defendants as to (a) contract claims and (b) tort claims?

(2) Does this court have personal jurisdiction over the persons of the individual defendants?

(3) Are the individual defendants shielded as a matter of law by the "fiduciary shield doctrine"?

## I. *Forum Selection Clause*

Defendants argue that this lawsuit should be brought, if at all, in Dallas County, Texas, the principal place of business for defendant Southwest, under the terms of the forum selection clause set forth above. Defendants concede that the clause does not deprive this court of jurisdiction, but assert that it creates proper venue in Texas.

The Complaint herein sets forth eight (8) claims sounding in both contract and tort. Counts 1, 2 and 3 have to do with alleged breach of the agency agreement and Count 8 is a claim under the theory of quantum meruit for value of services rendered thereunder. The remaining counts sound in tort for intentional interference with existing business relations (Count 4), wrongful inducement to breach the agency agreement (Count 5), defamation (Count 6), and punitive damages (Count 7).

A. *Enforceability.* Historically, forum selection clauses were disfavored by the courts. *See, e.g., Benson v. Eastern Bldg. & Loan Assn.,* 174 N.Y. 83, 66 N.E. 627

(1903). In the landmark decision of *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), however, the Supreme Court held that in the context of an international commercial agreement forum selection clauses are presumed valid unless proven unreasonable. Most courts which have addressed the issue have extended the *Bremen* rationale to the context of agreements between domestic corporations. *See, e.g., Bense v. Interstate Battery System of America,* 683 F.2d 718 (2d Cir.1982), *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315 (4th Cir.1982); *D'Antuono v. CCH Computax Systems, Inc.,* 570 F.Supp. 708 (D.R.I.1983).

■ Under the *Bremen* analysis, a party challenging the validity of a forum selection clause must demonstrate that the clause is either invalid as a matter of contract law, or that enforcement would be unreasonable under the circumstances of the particular case. *Id.* 407 U.S. at 15, 92 S.Ct. at 1916. Applying the *Bremen* standard to this case, plaintiffs have failed to meet the burden placed upon them to demonstrate the unreasonableness of the forum selection clause, or that the clause is invalid as a matter of law. Plaintiffs did not file affidavits in connection with their motion, and rely on general statements to the effect that conducting this litigation in Texas would be more burdensome than in Utah. Even if this is true, plaintiffs must show more than mere inconvenience. Plaintiffs have failed to make a showing of facts on the record before us that the clause was the result of fraud, duress, overwhelming bargaining power or any other circumstance to come within the *Bremen* test of unreasonable enforcement.[1]

■ B. *Applicability.* Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each

---

1. The Court said in *Bremen* that the challenging party has the heavy burden to show that enforcement of a forum selection clause would be so seriously unreasonable that the challenging party would for practical purposes be deprived of its day in court. *Bremen, supra,* 407 U.S. 1, 18–19, 92 S.Ct. 1907, 1917–1918.

case. Some courts have held on public policy grounds that tort as well as contract claims may be governed by forum selection clauses. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.1983), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed. 315 (1983), *Clinton v. Janger,* 583 F.Supp. 284 (N.D. Ill.1984). But compelling factual considerations may dictate that claims otherwise governable by forum selection clauses be retained for disposition in the District where filed. See *Bankers Trust Company v. Worldwide Transportation, Inc., et al.,* 537 F.Supp. 1101, 1112 (E.D.Ark.1982). In this case, plaintiffs allege tortious acts by the individual defendants unrelated to the interpretation of the agency agreement which caused direct damage to plaintiffs' business and reputation. It is claimed that defendants contacted large numbers of plaintiffs' clients to whom plaintiffs had already sold Southwest insurance products and encouraged them not to renew their policies through plaintiffs.[2] In addition, it is alleged that defendants defamed plaintiffs by informing these policyholders and the Utah Division of Insurance that plaintiffs were engaged in fraudulent business practices. It is highly unlikely that in entering into the agency agreement the parties contemplated that tort claims such as are here alleged would be governed by the forum selection clause. Neither do we consider that such claims arise "hereunder" so as to come within the scope of the language of this forum selection clause. We therefore hold that plaintiffs' claims for intentional interference with business relations, wrongful inducement to breach and defamation are not governed by the forum selection clause. We also rule that the forum selection clause is applicable to and governs plaintiffs' contract and quantum meruit claims under the agreement, absent a showing of unreasonableness as to enforcement thereof. Accordingly, those claims are dismissed, without prejudice to refiling in the forum District in Texas, or in the alternative with leave to conduct discovery and move for reinstatement of those claims here conditioned upon a proper showing of unreasonableness as to enforcement.

## II. *Personal Jurisdiction*

The Utah long arm statute provides in pertinent part:

Any person ... whether or not a citizen of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

... (3) the *causing* of any *injury* within this state *whether tortious or by breach of warranty* ; ... (Emphasis added).

Utah Code Ann. § 78–27–24 (1953 Supp. 1985).

Plaintiffs contend that regardless of where the acts occurred, if such cause injury in this state, defendants are subject to suit in this state. Defendants argue that both the acts causing injury and the injury itself must occur in this state in order to invoke the statute.

In determining applicability of the Utah long arm statute, we must determine whether the language of the act is broad enough to create jurisdiction as to the individual defendants based solely upon the alleged telephone conversations initiated by defendants in Texas. Then, assuming the Utah statute is broad enough to reach the defendants in this case, we must determine whether application of the statute here comports with due process requirements. We conclude that the Utah Long Arm Statute reaches the individual defendants and that its application does not violate due process of law.

### A. *Utah Long Arm Statute*

 Are telephone conversations initiated outside the State of Utah alone suffi-

---

2. At hearing on this matter, counsel for plaintiffs stated that roughly 4,000 such policyhold-

ers were potential witnesses in this case.

cient to create personal jurisdiction under the facts of this case? The question is a difficult one, especially in the context of "non-impact" torts such as defamation and tortious interference with contractual relations. Unlike auto accidents, for instance, these torts do not necessarily require physical presence within the state. Under one line of cases construing long arm statutes which provide for personal jurisdiction over persons who commit "a tortious act" in the state, jurisdiction is proper if the last element necessary to a prima facie cause of action is committed in the forum state. Thus, where a defendant writes a defamatory letter outside the forum and mails it to a person within the forum, publication, a necessary element of the tort, is completed in the state, and the statute would create jurisdiction. *Burt v. Board of Regents of Nebraska,* 757 F.2d 242 (10th Cir.1985) (construing Colorado's long arm statute). In *Gray v. American Radiator & Standard Sanitary Corporation,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois Supreme Court held that a foreign corporation which manufactured a valve in Ohio was subject to personal jurisdiction in Illinois where the valve was sent to Pennsylvania, incorporated into a water heater, and then sent to Illinois where the injury occurred. In the context of telephone calls from outside the forum state, the Supreme Court of Oregon in *State ex rel. Advanced Dictating Supply, Inc.,* 269 Or. 242, 524 P.2d 1404 (1974), on facts similar to this case, held that a telephone conversation initiated by defendant from outside Oregon defaming a person inside Oregon was sufficient to warrant exercise of personal jurisdiction under the Oregon long arm statute for the commission of a "tortious act" within this state. A contrary result was reached in *McBreen v. Beech Aircraft Corp.,* 543 F.2d 26 (7th Cir.1976) but the apparent discrepancy may be grounded in a factual distinction.[3] Other courts have required overt

acts to occur within the state for jurisdiction to lie. See *St. Clair v. Righter,* 250 F.Supp. 148 (W.D.Va.1966). We reject this analysis, and hold, subject to due process considerations, that it is sufficient if the injury occurs in the forum state. The express public policy of Utah calls for a broad reach of the long arm statute, "... to the *fullest extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution."* Utah Code Ann. § 78–27–22. (Emphasis added.) We consider the Utah statute to be broad enough to reach the individual defendants in this case based upon the causation of tortious injury within Utah, if the requirements of due process are met.

### B. *Due Process Limitations*

The named individual defendants, all employees of defendant Southwest, must have sufficient "minimum contacts" with the State of Utah to justify the exercise of personal jurisdiction over them. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We think the recent 10th Circuit case of *Burt v. Board of Regents of the University of Nebraska,* 757 F.2d 242 (10th Cir.1985) is dispositive on this issue. In *Burt,* a Colorado physician filed suit in Colorado alleging a libel claim against his former supervisor at the University of Nebraska while plaintiff was an orthopedic resident there. On completion of his residency, plaintiff moved to Colorado and sought staff privileges at several Colorado hospitals. The hospitals directed inquiries to defendant about plaintiff's residency and general competence. In response, defendant sent a "very unfavorable" letter to the hospitals, and plaintiff was denied staff privileges. Based on the letter alone, the Tenth Circuit found sufficient contacts to meet due process requirements. *Id.* at 245.

---

**3.** In *McBreen,* the defendant neither solicited nor initiated the phone call in which the alleged defamation occurred, while the phone call in *Advanced Dictating* was initiated by the defendant. This distinction may be crucial in a due process analysis, because a crucial test for minimum contacts is "purposeful availment" as in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and "intentional conduct" as in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), discussed below.

In reaching its conclusion, the Tenth Circuit Court relied heavily on two recent Supreme Court cases, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In both of those cases, the Supreme Court of the United States recognized that minimum contacts analysis "properly focuses on the relationship among the defendant, the forum and the litigation." *Keeton*, 104 S.Ct. at 1478 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)); *Calder*, 104 S.Ct. at 1486 (same). In *Keeton*, the Court further indicated that the "fairness" of requiring a defendant who is not a resident of the forum state to appear in the forum depends in part on the expressed public policy interest of the forum state, noting the particular interest of a forum state in connection with tort claims;

A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort. *Leeper v. Leeper*, 114 N.H. 294, 298, 319 A.2d 626, 629 (1974) 465 U.S. 770, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984). In *Calder*, the Supreme Court held that where a Florida resident caused tortious injury in California by acts outside the forum, the defendants were subject to the personal jurisdiction of the California courts:

... jurisdiction over [the Florida residents] in California is proper because of their *intentional conduct* in Florida calculated *to cause injury* to [the plaintiff] in California, at 1488. 104 U.S. at 1488. (Emphasis added.)

In this case, a strong public policy of the state of Utah is embodied in its long arm statute for redress of tortious acts which cause injury in this state. The analysis applied by the Tenth Circuit in *Burt*

applies here as well, and we therefore hold that personal jurisdiction over the persons of the defendants exists in this Court.

### C. *Fiduciary Shield*

The individual defendants finally argue that even if the court may exercise personal jurisdiction they are entitled to absolute immunity because all acts complained of were perpetrated in their several capacities as agents, officers or representatives of defendant Southwest. We do not consider that the acts alleged necessarily constitute representation of the corporation within the scope of employment, but in any event we hold that the "fiduciary shield" doctrine would not relieve the individual defendants from personal liability in tort.

The so-called fiduciary shield doctrine originated in cases construing the New York long arm statute. See R. Casad, *Jurisdiction in Civil Actions*, ¶ 4.03[3] (1983) (tracing development of fiduciary shield doctrine). To the extent the doctrine is applied to contract cases, it may be merely a reflection of the contract principle that an agent is not personally liable for the obligation of the principal. While some courts have extended the doctrine to tort claims, *see, e.g., Midland Bank v. Miller*, 512 F.Supp. 602 (S.D.N.Y.1981) [rev'd on other ground 664 F.2d 899 (2d Cir.1981)], the Supreme Court laid the doctrine to rest in *Calder v. Jones*, 104 S.Ct. 1482 (1984). In *Calder*, Shirley Jones, an entertainer, brought a libel suit in California Superior Court based on publication of an article in the National Enquirer. Petitioners were individuals, one a reporter for the Enquirer and one its president and editor. Both were Florida residents who were served by mail. Both moved to quash service and apparently raised the fiduciary shield doctrine as a defense to jurisdiction. Justice Rehnquist, writing for the Court, held that "[petitioners] contacts with California are not to be judged according to their employers activities there. On the other hand, *their status as employees does not somehow insulate them from jurisdiction ...* petitioners are primary participants in an alleged wrongdoing intentionally directed

at a California resident, and jurisdiction over them is proper on that basis." (Emphasis added) 104 S.Ct. at 1487.

The only post-*Calder* case cited by defendants here is *Thompson McKinnon Securities, Inc. v. Hamiltonian Industries,* 610 F.Supp. 5 (S.D.N.Y.1985). That case, in a tortured analysis, held that the fiduciary shield doctrine survived in New York despite *Calder* because New York's long arm statute was not coterminous with due process requirements. *Id.* at 6. The *Thompson McKinnon* opinion distinguishes *Calder* based upon New York law inapplicable here. In another (unreported) decision from the Southern District of New York, Judge Sweet held that in light of *Calder* the fiduciary shield doctrine had been rejected by the Supreme Court. *Guccione v. Flynt,* 1984 Copyright L.Rep. (CCH) paragraph 25,654 at 18,942 (S.D.N.Y.1984).

We rule that the *Calder* opinion is fatal to the claim that the fiduciary shield doctrine deprives this court of jurisdiction as to the alleged tortious acts of the individual defendants.

Based upon the foregoing, the defendants' Motion to Dismiss concerning the forum selection issue is granted as to Counts 1, 2, 3 and 8, and denied as to the other counts; the individual defendants' motion to dismiss as to the other issues is denied.

IT IS SO ORDERED.