**VIJUK EQUIPMENT INC., an Illinois corporation, Plaintiff,**

v.

**OTTO HOHNER KG, a German corporation, and Hohner Stitching Products, Inc., a Missouri corporation, Defendants.**

**No. 89 C 5769.**

United States District Court, N.D. Illinois, E.D.

Jan. 22, 1990.

---

John F. Flannery and James J. Hamill, Fitch, Even, Tabin & Flannery, Chicago, Ill., for plaintiff.

Dennis A. Gross and Lewis T. Steadman, Jr., Hill, Van Santen, Steadman & Simpson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This action arises out of the alleged breach of an exclusive distributorship agreement. Plaintiff Vijuk Equipment Inc. ("Vijuk") is an Illinois corporation with its principal place of business in Illinois. Defendants are Otto Hohner KG ("Otto Hohner"), a German corporation with its principal place of business in Tuttlingen, Federal Republic of Germany, and Hohner Stitching Products, Inc. ("Hohner Stitching"), a Missouri corporation with its principal place of business in Missouri. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(3). Otto Hohner has moved to dismiss the case based on a forum selection clause, and Hohner Stitching has moved to dismiss on the ground that it was not in existence at the time of the alleged wrong. For the reasons stated below, defendants' motion is granted and the complaint is dismissed without prejudice.

### II. FACTS

On July 15, 1987, Vijuk and Otto Hohner entered into an agreement which named Vijuk as the exclusive sales agent in the United States, Canada and Puerto Rico for certain stitching machines manufactured by Otto Hohner. With respect to its duration, the contract provided:

The contract immediately will expire, if there should be any difficulty in payment.

Otherwise, the contract will be valid for 3 (three) years and will run automatically for another year and further on from year to year, if no notice has been given by registered letter three months before the actual expiration.

The contract also contained a forum selection clause, which provided:

All eventual differences arising from this contract are to be settled and decided before the law-court having jurisdiction over Tuttlingen or before the law-court of the residence of Vijuk according to a decision of Hohner.

Vijuk alleges that Otto Hohner has breached the contract by appointing Hohner Stitching and O & M (a non-party) as sales agents in the United States for its stitching machines. On May 2, 1988, Otto Hohner notified Vijuk that it was unilaterally terminating the sales agreement.

In Count I of its complaint, Vijuk claims that Otto Hohner is liable for breach of contract. In Count II, Vijuk claims that Hohner Stitching is liable for tortious interference with contractual relations. In Count III, Vijuk claims that both Otto Hohner and Hohner Stitching are liable for conspiracy to tortiously interfere with contractual relations.

## III. CLAIMS AGAINST OTTO HOHNER

### A. Interpretation of the Forum Selection Clause

Otto Hohner argues that the case should be dismissed because the contract permits Otto Hohner to elect West Germany as the forum. The parties agree that forum selection clauses are generally entitled to deference. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebsgesellschaft mbH*, 618 F.Supp. 344, 347 (N.D.Ill.1985). However, Vijuk relies on the principle that a forum selection clause will not be enforced where "enforcement would be unreasonable and unjust, or [where] the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. *See also Karlberg*, 618 F.Supp. at 347.

■ Vijuk argues that the only reasonable interpretation of the forum selection clause is that Otto Hohner is entitled to elect the forum solely when a lawsuit is instituted by Otto Hohner itself. Vijuk contends that the interpretation urged by Otto Hohner, in which Otto Hohner may elect the forum even if it is Vijuk which brings suit, leads to an absurd result and should therefore not be adopted. According to Vijuk, if the Court grants Otto Hohner's motion, "[t]here is nothing to prevent Otto Hohner from deciding that Germany is not the correct forum if Vijuk sues in Germany." In that event, Vijuk will have been deprived of any forum at all for its dispute with Otto Hohner. This absurd result cannot have been intended when the parties agreed on the forum selection clause.

The Court finds Vijuk's argument flawed in several respects. First, the language of the contract, while admittedly awkward, could not be more plain. It clearly applies to "all differences," not just those differences which result in a lawsuit by Otto Hohner. Where the language is this clear, the Court is loathe to strain to place other constructions on the provision. Second, the interpretation urged by Vijuk is absurd in itself. Assuming that other jurisdictional and venue requirements are satisfied, a plaintiff generally has the benefit of its own choice of where to file its lawsuit. Otto Hohner would therefore be unlikely to need a forum selection clause in the first place if the clause were intended to apply only when Otto Hohner is the plaintiff. Third, Vijuk errs in its assertion that nothing will prevent Otto Hohner from reversing its position, effectively depriving Vijuk of any forum, if the suit is refiled in Germany. Presumably, the German court would not allow such behavior; this Court certainly would not. Once Otto Hohner has chosen a forum by moving for dismissal of one lawsuit, it will be estopped from thereafter altering its position and attempting to select a different forum.

The Court finds that the forum selection clause must be interpreted so as to allow Otto Hohner to elect the forum regardless of whether it is the plaintiff or the defendant in the lawsuit.

## B. Waiver/Estoppel

Vijuk next argues that Otto Hohner has waived, or should be estopped from exercising, its right to select the forum for this dispute. Vijuk relies on the following events: On May 2, 1988, Otto Hohner sent Vijuk a letter which purportedly terminated the contract on the basis of insufficient orders for the product. On June 10, 1988, Vijuk sent a reply telex which stated that the agreement remained in force. On April 21, 1989, Otto Hohner sent Vijuk a facsimile which stated:

Why you are ignoring all our reminders to pay the long overdue invoices in the amount of DM 37.544,60. Should you continue this for us not understandable practise, you would compel us to look for foreign help.

On April 26, 1989, Vijuk's attorneys sent a letter to Otto Hohner in which they expressed an intent to sue unless Otto Hohner ceased its violation of the contract.

■ Vijuk argues that during this exchange of correspondence, Otto Hohner consistently refused to elect a forum. It argues that the necessity for such an election became apparent at least by the time Otto Hohner received the June 10 telex. Vijuk's contentions reflect a warped view of conflict resolution in which lawsuits are the immediate method for resolving every dispute rather than a measure of last resort. Until a lawsuit was filed, there remained some hope that the dispute could be resolved in some other way, and there was accordingly no need to elect a forum. In the only case cited by Vijuk in which a party was held to have waived a forum selection clause, the case had already proceeded to trial before the party attempted to exercise its rights under the clause. *See Chantier Naval Voisin v. M/Y Daybreak,* 677 F.Supp. 1563, 1570–71 (S.D.Fla.1988). Here, in contrast, Otto Hohner has exercised its selection right immediately upon the filing of the lawsuit. The Court finds that the election is timely and that there has been no waiver or estoppel.

## C. Scope of the Forum Selection Clause

Vijuk argues that even if the forum selection clause requires dismissal of Count I (the contract count), it does not extend to Count III (conspiracy to tortiously interfere with contractual relations) because Count III is a tort claim and the forum selection clause governs only "differences arising from this contract."

■ It is well settled that forum selection clauses such as this one apply not only to strictly breach of contract claims but also to tort claims which require interpretation of the contract. For example, in *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir.1988), the court held that a forum selection clause applied to claims for conspiracy to interfere with contractual relations; conspiracy to interfere with prospective economic advantage; tortious interference with contractual relations; tortious interference with prospective economic advantage; breach of implied covenant of good faith and fair dealing; and unfair trade practices, because all of these claims required interpretation of the underlying contract. Similarly, in *Crescent International, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943, 944–45 (3d Cir. 1988), the court found that a forum selection clause governed claims for racketeering, misrepresentation, unfair competition, conversion, fraud, and tortious interference with business relationships because those claims arose out of the contractual relation and implicated the contract's terms. *See also Karlberg, supra,* 618 F.Supp. at 349 n. 3 (clause extended to tort claims which arose from contract); *Clinton v. Janger,* 583 F.Supp. 284, 287–88 (N.D.Ill.1984) (forum selection clauses in trusts governed tort claims for malfeasance in administration or execution of trusts because those claims necessitated interpretation of the trusts).

Vijuk's response to this argument is very conclusory:

[T]he allegations of conspiracy to commit, and commission of, tortious interference with contractual relations do not involve interpretation of the Contract. *Berrett v. Life Ins. Co. of the Southwest,* 623 F.Supp. 946, 949 (D.C.Utah 1985).

In entering into the Contract, Vijuk (and no doubt Otto Hohner) never intended that the forum selection clause would govern tort claims such as these.

Vijuk has given the Court no reason to believe that the parties did not intend the forum selection clause to apply to *"all eventual differences arising from this contract"* rather than merely those differences which are brought as a breach of contract claim. Furthermore, *Berrett* provides little support for Vijuk. The court in that case held that a forum selection clause did not apply to tort claims for intentional interference with business relations, wrongful inducement to break an agency agreement, defamation, and punitive damages. The court recognized that tort claims are often governed by forum selection clauses, but found that the particular conduct alleged by the plaintiff was:

> unrelated to the interpretation of the agency agreement which caused direct damage to plaintiffs' business and reputation. It is claimed that defendants contacted large numbers of plaintiffs' clients to whom plaintiffs had already sold Southwest insurance products and encouraged them not to renew their policies through plaintiffs. In addition, it is alleged that defendants defamed plaintiffs by informing the policyholders and the Utah Division of Insurance that plaintiffs were engaged in fraudulent business practices.

623 F.Supp. at 949. In this case, however, the alleged tortious contract is not independent of interpretation of the contract. If the actions of Otto Hohner in using other sales agents did not constitute a breach of the contract, the Court cannot understand (and Vijuk does not explain) how Otto Hohner can be liable for conspiracy to tortiously interfere with the contractual relationship. With respect to Otto Hohner,[1] Count III implicates the terms and interpretation of the contract, and it is therefore governed by the forum selection clause.

Accordingly, the forum selection clause requires dismissal of Count I and dismissal of Count III to the extent it runs against Otto Hohner.

## IV. CLAIMS AGAINST HOHNER STITCHING

■ Hohner Stitching argues that the claims against it (Counts II and III) should be dismissed because it was not in existence at the time of the alleged breach and thus could not have tortiously induced the breach or conspired to tortiously induce the breach. Hohner Stitching asserts that it was not incorporated, and did not commence doing business, until October, 1988. Hohner Stitching also emphasizes the following allegation in Count I of the complaint:

> 10. By a letter dated May 2, 1988, [Otto] Hohner notified Vijuk that it was unilaterally terminating the sales agreement. By such wrongful notice of termination, Vijuk has lost profits ... and [suffered] other damages, including loss of business reputation and loss of goodwill.

Because the alleged breach occurred on May 2, 1988, Hohner Stitching contends, it cannot be liable with respect to the breach. Hohner Stitching also seeks sanctions with respect to the bringing of Counts II and III for this reason.

Vijuk responds that the May 2, 1988 letter was only a notice of termination and did not complete the breach. Vijuk argues that Otto Hohner continued shipping stitching machines to Vijuk through January, 1989, and continued shipping parts to Vijuk through April, 1989. Furthermore, Vijuk argues that Otto Hohner's breach continues at the current time because the contract, by its terms, remains in effect. Because at least part of the conduct constituting the breach has occurred after October, 1988, Vijuk argues that Hohner Stitching can indeed be liable in tort for inducing and conspiring to induce the breach.

Vijuk maintains that these arguments are apparent from the face of its complaint,

---

1. This analysis applies only with respect to Otto Hohner. It is possible, as Vijuk argues, that the tort claim against Hohner Stitching may not require interpretation of the contract between Vijuk and Otto Hohner. However, defendants have not argued that the forum selection clause applies to any of the claims against Hohner Stitching.

but the Court cannot agree. The natural reading of the complaint is that the breach occurred on May 2, 1988. The Court will therefore dismiss the complaint, but will do so without prejudice in order to allow Vijuk to more clearly allege the conduct which it believes makes Hohner Stitching liable.[2]

Vijuk also argues that because Hohner Stitching has submitted extrinsic evidence in connection with its motion to dismiss, the Court should convert its motion to one for summary judgment pursuant to Fed.R. Civ.P. 12(b). If the Court were to find it necessary to refer to any of the exhibits in order to resolve the motion, it would agree with Vijuk. Thus if Vijuk files an amended complaint, and if Hohner Stitching wishes to dismiss it on the same grounds, the Court will instruct it to do so by way of a summary judgment motion. Hohner Stitching's request for sanctions is also denied, without prejudice to its right to renew the request if an amended complaint is filed and if Hohner Stitching believes the request to be warranted.

### V. CONCLUSION

With respect to claims against Otto Hohner, the complaint is dismissed without prejudice pursuant to the forum selection clause. With respect to claims against Hohner Stitching, the complaint is dismissed without prejudice for failure to plead facts supporting a claim against Hohner Stitching. If an amended complaint is not filed with respect to Hohner Stitching by February 12, 1990, the clerk of court is directed to enter final judgment pursuant to Fed.R.Civ.P. 58.

---

2. Although Vijuk may believe that the Court's resolution of this issue is overly technical, there are important reasons for requiring necessary allegations to be contained in the complaint rather than in other pleadings. The complaint is the skeleton on which all other proceedings in the lawsuit must be built, and deficiencies in its allegations can often return to haunt litigants and the Court at later stages in the proceedings when they may not be corrected as easily as they may be at this point.