TUXEDO INTERNATIONAL INCORPORATED, a Foreign Corporation, Appellant, v. MICHAEL ROSENBERG, an Individual; and LIMA UNO, a Foreign Corporation, Respondents.

No. 52861

February 10, 2011                              251 P.3d 690

*Alan J. Buttell & Associates* and *Alan J. Buttell*, Las Vegas, for Appellant.

*Dubowsky Law Office, Chtd.*, and *Peter Dubowsky*, Las Vegas, for Respondents.

12

Before Douglas, C.J., Pickering and Hardesty, JJ.

## OPINION

By the Court, Hardesty, J.:

In this appeal, we address the proper analysis to determine whether a forum selection clause applies to the tort claims pleaded by a plaintiff when the dispute is arguably related to a contract containing an applicable forum selection clause. We conclude that the best approach for resolving this issue is one that focuses first on the intent of the parties regarding a forum selection clause's applicability to contract-related tort claims. If that examination does not resolve the question, however, the district court must determine whether resolution of the tort-based claims pleaded by the plaintiff relates to the interpretation of the contract. And if that analysis does not resolve the question, the district court must determine whether the plaintiff's contract-related tort claims involve the same operative facts as a parallel breach of contract claim. As the district court dismissed this case without the benefit of our guidance on this issue, we reverse the district court's judgment and remand this matter to the district court for reexamination under the standard adopted today.

### BACKGROUND

In April 2008, appellant Tuxedo International Incorporated filed a complaint in district court against respondents Michael Rosenberg and Lima Uno (hereinafter Rosenberg) seeking damages for two causes of action—"theft-conversion by fraud" and unjust enrichment—arising out of an allegedly failed investment involving casinos in the South American country of Peru.

The following facts are alleged in Tuxedo's complaint and are set forth here to provide context for this appeal.[1] During the spring of 2005, Tuxedo had "numerous meetings" with Michael Rosenberg and/or his associates in Las Vegas, Los Angeles, and Peru regarding a possible investment project involving technology facilitating horse book and sports book betting in Peru. During these meetings, Rosenberg and his associates purportedly represented that he owned, "directly or indirectly," approximately "400 slot machine casinos" in Peru. It is alleged that Rosenberg knew these representations were false at the time they were made to Tuxedo. Tuxedo claims that its decision to pursue this venture was largely influenced by Rosenberg's claim of ownership of the casinos and that it would not have participated in this venture if it had known that Rosenberg's ownership claims were false.

As a result of these meetings, a series of agreements were subsequently signed. First, a memorandum of understanding was signed on June 25, 2005, the purpose of which was to "set forth the main guidelines of the business to be developed by [Tuxedo and Rosenberg] prior to entering into good faith negotiations towards the execution of a definitive long term agreement." The memorandum of understanding contained a clause stating that

> [t]his document and the Agreement will be governed by the laws of Peru. Any arising dispute will be submitted to arbitration in Peru by an arbitration tribunal to be set according to what the Parties may agree and lacking such agreement, pursuant to the General Law of Arbitration of Peru in force at the time the dispute arises.

Thereafter, on December 15, 2005, Tuxedo and Rosenberg signed a more extensive agreement, which specifically "incorporated" the memorandum of understanding. The December 15 agreement included a clause entitled "Choice of law and forum," stating that "[t]his agreement shall be construed, interpreted and enforced according to the laws of Peru. The parties hereto hereby consent to jurisdiction in Lima, Peru." Directly below this "Choice of law and forum" provision was a separate clause, entitled "Entire Agreement," stating that "[t]his instrument super[s]edes any prior agreements between the parties hereto, and sets forth the entire agreement between the parties hereto with respect to the subject matter hereof."

---

[1]This case was dismissed shortly after the complaint was filed and, as a result, the district court did not make any factual findings. Because "[t]his court is not a fact-finding tribunal," *Zugel v. Miller*, 99 Nev. 100, 101, 659 P.2d 296, 297 (1983), we set forth the allegations enumerated in the complaint for informational purposes.

Under this December 15 agreement, Tuxedo would provide technology, equipment, and funding to make horse book and sports book betting available at selected casinos. The agreement called for Tuxedo to provide start-up costs of $25,000 to $30,000 and initial working capital of $5,000 per location, $125,000 in build-out payments for the first five casinos, and approximately $7,300 per month in ongoing operating expenses. According to Tuxedo, it paid over $400,000 in build-out costs, $90,000 in working capital, and $160,000 in operating expenses for locations that never opened.

Finally, the parties' briefs also reference a third agreement, a June 12, 2006, "tripartite addendum to agreement of simulcasting and tote services."[2] This is an agreement between Tuxedo, Rosenberg, and a third entity, DGS Systems Corp., a Panamanian corporation, regarding the transmission of video feeds of horse and dog races. The tripartite addendum contains a clause entitled "Governing Law and Jurisdiction," which sets forth that

> [t]his Addendum shall be construed and governed in accordance with the laws of the Country of Peru. Each party hereby consents to personal jurisdiction in the Country of Peru and acknowledges that venue is proper in any court in the Country of Peru and agrees that any action related to this Addendum must be brought in a court in the Country of Peru and waives any objection that may exist, now or in the future, with respect to jurisdiction, governing law and venue as set out in this paragraph.

This document also contained a clause entitled "Entire Agreement," stating that "[t]his Addendum constitutes the entire agreement between the parties hereto relating to the subject matter hereof. It does not, however, alter the Definitive Agreement between [Rosenberg] and Tuxedo."

Approximately one month after the complaint was filed, Rosenberg brought a motion to dismiss, arguing, among other things, that the complaint should be dismissed based on the "Choice of law and forum" clause in the December 15 agreement because the parties had already agreed that Peru is the proper forum for this dispute. After further filings and a hearing on Rosenberg's motion, the district court found that the forum selection clauses were "valid and enforceable" and entered an order dismissing the complaint.[3] This appeal followed.

---

[2]While Tuxedo is the only party to this agreement that has signed the copy contained in the record on appeal, Rosenberg has not challenged the document's authenticity or disputed having signed it.

[3]The district court also granted respondents' alternative request to dismiss the complaint on personal jurisdiction grounds. Although we do not consider Tuxedo's argument that it should have been granted limited discovery to es-

## DISCUSSION

On appeal, Tuxedo argues that the district court erred in enforcing the forum selection clause to preclude its complaint for tort claims. More specifically, Tuxedo contends that contractual forum selection clauses do not encompass claims for fraud, that its complaint makes clear that the causes of action are based in tort connected to Rosenberg's alleged series of fraudulent activities that led Tuxedo to sign a sham contract, and that the contract here should be considered, at best, evidence of the conspiracy to defraud Tuxedo rather than constituting any legitimate bargained-for agreement. Rosenberg, however, contends that precedent from other jurisdictions provides compelling authority to uphold the dismissal of this complaint based on the forum selection clause, as forum selection clauses will become meaningless if parties are simply allowed to circumvent them by alleging fraud in the inducement of the contract rather than asserting contract-based claims.

This court has not addressed whether tort-based causes of action that, at a minimum, are tangentially related to a contract are subject to an otherwise enforceable forum selection clause included in the contract. Other courts considering this question have struggled to fashion generally applicable rules. On the one hand, forum selection clauses should not be rendered meaningless by allowing parties to disingenuously back out of their contractual obligations through attempts at artful pleading. *See, e.g.*, *Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) (rejecting arguments that tort-based claims related to a contract are not subject to a contractual forum selection clause on this basis). On the other hand, some flexibility should also be made available for legitimate cases when a forum selection clause is contained in an agreement that never would have been entered into absent a party's fraudulent conduct. *See Farmland Industries v. Frazier-Parrott Commodities*, 806 F.2d 848, 851-52 (8th Cir. 1986) (setting forth this proposition in explaining

tablish jurisdiction over Rosenberg, as that argument is not properly before us, *see Arnold v. Kip*, 123 Nev. 410, 416-17, 168 P.3d 1050, 1054 (2007) (explaining that arguments set forth for the first time in a motion for reconsideration are only reviewable if the district court addresses those arguments on the merits in an order entered before the notice of appeal is filed), we nonetheless reverse the district court's alternative dismissal for lack of personal jurisdiction. Specifically, we conclude that, under our decision in *Firouzabadi v. District Court*, 110 Nev. 1348, 1355, 885 P.2d 616, 621 (1994) (determining that a prima facie case of specific personal jurisdiction had been shown for an out-of-state defendant who traveled to Nevada to attend a trade show), Tuxedo made a prima facie showing of specific personal jurisdiction over Rosenberg with its allegations that meaningful meetings and negotiations regarding the Peruvian casino investment project took place in Las Vegas, so as to preclude dismissal at this early stage of the proceedings. *See Fritz Hansen A/S v. Dist. Ct.*, 116 Nev. 650, 655, 6 P.3d 982, 985 (2000) (noting that after a plaintiff makes, when challenged, a pretrial prima facie showing of jurisdiction, the issue can be raised again at a pretrial evidentiary hearing or at trial itself).

that, when a fiduciary relationship is created by a fraudulent contract, the individual defrauded should not be held to the contract's forum selection clause), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989). Striking the proper balance between these competing concerns, however, is a difficult and delicate endeavor.

Numerous other courts have addressed this issue and our review of these decisions reveals a variety of methods used to determine whether tort-based claims related to a contract are subject to its contractual forum selection clause. We therefore begin our analysis of this issue by providing an overview of the different approaches taken by other jurisdictions. We then discuss our concerns with these approaches before setting forth the analysis to be applied by Nevada courts considering this issue.

*Extrajurisdictional approaches to addressing the applicability of forum selection clauses to tort-based claims*

Based on our review of the approaches taken by other courts in determining whether tort-based claims related to a contract are subject to a forum selection clause, it appears that the majority of the decisions fall, generally, into three categories. Some courts have adopted a bright-line approach that takes the position that the inclusion of allegations in a complaint of fraud in the inducement or the like does not warrant ignoring an otherwise enforceable forum selection clause. In other jurisdictions, a more rule-based approach has been adopted, which, in some cases, appears to be more receptive to a conclusion that such tort-based claims are not subject to a contractual forum selection clause if certain requirements are met. Finally, other courts have adopted an approach that focuses on the intent of the parties and the text of a particular forum selection clause to resolve the issue. While we concede that none of the courts adopt these categories and, at times, the analyses blur somewhat between the categories, we nonetheless find this framework helpful to analyze and understand the different methodologies used for this issue.

### The bright-line approach

In certain jurisdictions, questions regarding the applicability of forum selection clauses to contract-based tort claims are resolved using a bright-line approach that flatly rejects the possibility that pleading tort-based claims alleging fraud in the inducement of an agreement or the like can result in a forum selection clause not being applied to such claims. A good example of this approach is provided by the United States Court of Appeals for the Seventh Circuit's decision in *American Patriot Insurance Agency v. Mutual Risk Management*, 364 F.3d 884 (7th Cir. 2004). In this decision,

the Seventh Circuit rejected an attempt to avoid a forum selection clause, reasoning that

> a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. The reason is not that contract remedies always supersede fraud remedies in a case that arises out of a contract . . . . It is that the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*Id.* at 889 (citations omitted); *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49-51 (Ind. Ct. App. 2005) (adopting, in its entirety, the bright-line approach set forth in *American Patriot Insurance*). Another example of this approach is found in *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 117-18 (D.D.C. 2008), in which a federal district court addressed the enforceability of an employment agreement's forum selection clause against an employee, when the employee argued that he was induced to leave his former employment with a law firm by a fraudulent promise of equity in his new employer, thereby rendering his execution of the employment contract with the new employer a product of fraud. The federal district court rejected this argument as "plainly insufficient to invalidate the forum selection clause" and further explained that such allegations of fraud and overreaching must be specific to the forum selection clause itself, rather than the entire contract, in order to invalidate the forum selection clause.[4] *Id.* at 118.

---

[4]This distinction is in reference to a footnote in the United States Supreme Court's decision *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). This footnote clarified that a prior decision, *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), did not hold that a forum selection clause is unenforceable any time the allegation is made that the underlying transaction was a product of fraud, but rather that the inclusion of the forum selection clause in the contract must be the product of the fraud. *Scherk*, 417 U.S. at 519 n.14. Relatedly, this court, in *Sentry Systems, Inc. v. Guy*, 98 Nev. 507, 654 P.2d 1008 (1982), addressed a case where a party argued that the inclusion in his complaint of a claim for fraud in the inducement regarding a franchise agreement removed the controversy from the field of the Federal Arbitration Act. This court disagreed, citing a United States Supreme Court decision, *Prima Paint v. Flood & Conklin*, 388 U.S. 395 (1967), for the conclusion that "a general claim of fraud in the inducement of a contract is arbitrable but a specific claim of fraud in the inducement of the arbitration clause itself is for the courts to decide." *Sentry*, 98 Nev. at 509, 654 P.2d at 1009. We are not convinced, however, that this *Scherk* footnote represents good policy for Nevada

### The rule-based approach

A second approach to reviewing tort claims potentially subject to a contractual forum selection clause, which we refer to here as the rule-based approach, is arguably more receptive to permitting avoidance of a forum selection clause through a party's pleadings. This approach sets forth various guidelines for determining whether a forum selection clause contained in an agreement applies to tort-based claims such as fraud in the inducement that are related to the contract. And unlike the bright-line approach, courts applying this methodology have at least recognized the possibility that, in certain circumstances, such tort-based claims may not be subject to a forum selection clause contained in the contract. Within this approach there appear to be three different rules applied by various courts, which we address, in turn, below.

### The First Circuit rule

In *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993), the First Circuit Court of Appeals addressed an argument that a forum selection clause should not apply to certain tort claims because the plaintiff was alleging tortious conduct relating to the formation of the contract rather than regarding performance of the contract. The First Circuit rejected this distinction by commenting that ''[w]e cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute.'' *Id.* at 1121 (internal quotations omitted). The court then continued by noting that the United States Supreme Court had recognized in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974), that allegations of fraud and overreaching must be specific to the forum selection clause itself rather than the entire contract in order to invalidate the forum selection clause. *Lambert*, 983 F.2d at 1121.

Although this pronouncement appears more in line with the bright-line approach set forth above, this did not conclude the *Lambert* court's analysis. Instead, the *Lambert* court went on to hold that ''contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.'' *Id.* at 1121-22. This same-operative-facts test requires a determination as to whether a plaintiff's cause of action directly concerns the formation or en-

---

regarding general forum selection clauses, as we do not believe, in reality, a party is likely to be defrauded only in the inclusion of a forum selection clause but not defrauded by the contract as a whole. *See, e.g., Hoffman v. Minuteman Press Intern., Inc.*, 747 F. Supp. 552, 557 n.3 (W.D. Mo. 1990) (expressing skepticism at the *Scherk* footnote's division between fraud in the inducement of a forum selection clause and fraud in the inducement of the contract as a whole).

forcement of the contract containing the forum selection clause, *id.* at 1122, or, in the opinion of the Eighth Circuit Court of Appeals, whether the parties could have brought a parallel breach of contract claim and yet did not. *See Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (restating the *Lambert* test). Thus, this approach arguably breaks with those courts that broadly conclude that tort-based claims are always subject to contractual forum selection clauses by announcing a rule that, at least in theory, could allow allegations of tort-based causes of action related to a contract to avoid being subject to a forum selection clause. *See also Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1014-15 (D.C. 2002) (adopting the First Circuit rule that noncontract claims involving the same operative facts as a parallel contract claim fall within the scope of a forum selection clause in the contract); *Lawler v. Schumacher Filters America, Inc.*, 832 F. Supp. 1044, 1052 (E.D. Va. 1993) (implementing the *Lambert* "same operative facts" rule).

### The Ninth Circuit rule

While similarly choosing to adopt a rule-based analysis of this forum selection clause applicability question, the Ninth Circuit Court of Appeals has stated its rule somewhat differently. In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513-14 (9th Cir. 1988), the court addressed the contention that a forum selection clause did not apply to certain tort-based claims. The court explained that a forum selection clause can equally apply to tort or contractual causes of action and that the primary analysis is "whether resolution of the claims relates to interpretation of the contract." *Id.* at 514. In addressing the claims before it, the Ninth Circuit determined that the tort claims at issue could not "be adjudicated without analyzing whether the parties were in compliance with the contract," and that therefore they fell within the scope of the forum selection clause. *Id.*; *see also Moon v. CSA-Credit Solutions of America*, 696 S.E.2d 486, 487 (Ga. Ct. App. 2010) (independently adopting a largely identical rule providing that " '[r]egardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause [in the contract] governs the action' "(quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993))).

### The Third Circuit rule

Finally, the Third Circuit Court of Appeals has adopted a third version of this rule-based approach. In *Coastal Steel v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989), the Third Circuit explained that to permit a pleading to

avoid being subject to a forum selection clause "ignores the reality that the . . . contract is the basic source of *any* duty," and that "[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims . . . ." *Id.* The court therefore set forth the rule that "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain." *Id.*; *see also Banco Popular de Puerto Rico v. Airborne Group PLC*, 882 F. Supp. 1212, 1217 (D.P.R. 1995) (relying on *Coastal Steel* in determining that a forum selection clause was enforceable against a plaintiff's tort claims).

### The intent-of-the-parties approach

A third approach to addressing whether a fraud-in-the-inducement tort claim or the like can avoid a forum selection clause is to deduce the intent of the parties regarding the clause's applicability to such claims, as demonstrated by the text of the forum selection clause and the facts of the case. A Utah federal district court decision, *Berrett v. Life Insurance Co. of the Southwest*, 623 F. Supp. 946, 948-49 (D. Utah 1985), provides a useful illustration of the operation of this approach. In *Berrett*, an individual and his insurance agency contracted with a life insurance company for authorization to write insurance policies on behalf of the insurance company. *Id.* at 947. The agreement contained a forum selection clause that provided as follows: "[s]itus. This agreement is made and performable in Dallas, Dallas County, Texas. The parties agree that any action at law or in equity hereunder shall be brought in Dallas County, Texas." *Id.* After the business relationship soured, the individual and his agency brought an action asserting both breach of contract and tort-based claims against the insurance company. *Id.* at 947-48.

In resolving a motion to dismiss the action brought by the insurance company, the federal district court addressed, among other things, the applicability of the forum selection clause contained in the agreement to the tort-based claims brought by the plaintiffs. *Id.* at 948-49. The *Berrett* court concluded that the key factor in determining whether the tort claims were subject to the forum selection clause was "the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Id.* In reaching this conclusion, the court also noted that "compelling factual considerations may dictate that claims otherwise governable by forum selection clauses be retained for disposition" by the court in which the claims were originally filed. *Id.* at 949.

Applying its approach to the case before it, the *Berrett* court found noteworthy the fact that the plaintiffs' complaint alleged

tortious acts by the defendants causing damage to the plaintiffs' business and reputation that, in the court's view, were "unrelated to the interpretation of the agency agreement." *Id.* Specifically, the *Berrett* plaintiffs asserted that the insurance company independently contacted a large number of the plaintiffs' clients to encourage those clients not to renew their policies through the plaintiffs and informed those policyholders, as well as the Utah Division of Insurance, that the plaintiffs were engaged in fraudulent business practices. *Id.* The *Berrett* court determined that, in entering into the agency agreement, it was "highly unlikely" that the parties intended such tort claims to be subject to the forum selection clause. *Id.* The *Berrett* court further grounded its decision in an analysis of the text of the parties' forum selection clause. *Id.* While acknowledging that the agency agreement's forum selection clause applied to "any action at law or in equity hereunder," the court nonetheless concluded that such tort-based claims did not "arise 'hereunder'" the agreement. *Id.* at 947, 949. As a result, the *Berrett* court held that the parties' forum selection clause was not applicable to the plaintiffs' tort-based claims. *Id.* at 949.

*How Nevada courts should address the applicability of forum selection clauses in relation to tort claims*

Having reviewed the various analyses used by other courts to address the applicability of contractual forum selection clauses to tort-based claims related to the contract, we now turn to how Nevada courts should address this issue. We begin our analysis by noting that we do not find any of the established methodologies set forth above to be, in and of themselves, wholly satisfactory. The most appropriate analysis of this issue should be one that focuses on the terms of the parties' actual agreements, furthering the parties' freedom to contract on this point while also being responsive enough to avoid substantial injustice when necessary. The ideal analysis should also provide consistency and predictability for the parties.

While the bright-line approach has some merit in its simplicity and the clarity it provides, we conclude that this approach is too inflexible and that its application may, in certain cases, lead to substantial injustice. Indeed, in some cases, the application of such a rigid default position, which fails to particularize its analysis to the actual text of a disputed forum selection clause, may contravene the contractual intent of the parties' agreements. For the same reasons, we find the Third Circuit's whether-the-parties'-relationship-is-contractual test, which is effectively the bright-line approach presented in rule form, to be equally unsatisfactory.

Turning to the remaining rule-based approaches, we are not persuaded that the First Circuit's same-operative-facts rule, in and

of itself, provides the best approach, as it fails to sufficiently take into account the intention of the parties as demonstrated by the text of an agreement. Instead, we conclude that this rule provides ultimate utility when applied as a secondary factor when the intentions of the parties cannot be discerned. Such a configuration allows consideration of the intent of the parties to be at the forefront, while making use of the rule's guidance when the parties' intent cannot be gleaned from their contractual language. In our view, the Ninth Circuit's whether-resolution-of-the-claims-relates-to-the-interpretation-of-the-contract rule comes the closest to approximately the ideal analysis of the rule-based approaches as it focuses, if only tangentially, on the actual language of the parties' agreements. To the extent that the rule emphasizes compliance with the contract as the essential question, like the First Circuit rule, we similarly view this emphasis as more properly considered as a secondary factor to be used only if the intent of the parties is unavailing, rather than as the whole test, because the issue of whether the tort claims involve questions of compliance with the contract should not be the primary concern.

Finally, we turn to the intent-of-the-parties approach as set forth in *Berrett*, 623 F. Supp. at 948-49. We conclude that this approach represents the best of these various methodologies because it places a determination of the parties' intent, as established through a thorough examination of the text of the subject forum selection clause, at the forefront of its analysis. Such an approach recognizes the parties' freedom to contract on the applicability of the clause to potential tort claims and is sufficiently accommodating to the individual facts of a case so as to avoid substantial injustice.

Because the intent of the parties must be discerned through a review of the language of the subject forum selection clause, an application of this approach requires the district court to conduct a thorough and detailed review of the language of that provision. *Id.* Our de novo review of the district court's contractual interpretation of the agreements discussed by the parties in this case, *see Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008) (setting forth this court's standards for reviewing the district court's interpretation of contractual terms), reveals two problematic issues that would likely have been apparent had the district court conducted the thorough textual review required by the intent-of-the-parties approach.

The parties' forum selection clause arguments, both on appeal and before the district court, focus primarily on the language contained in the ''Choice of law and forum'' clause of the December 15, 2005, agreement, which provides that ''[t]his agreement shall be construed, interpreted and enforced according to the

laws of Peru. The parties hereto hereby consent to jurisdiction in Lima, Peru." Rosenberg, however, also points to language contained in two additional agreements as further evidence of the parties' intent to have this dispute resolved in Peru. First, there is the June 25, 2005, memorandum of understanding, which contains a clause stating that

> [t]his document and the Agreement will be governed by the laws of Peru. Any arising dispute will be submitted to arbitration in Peru by an arbitration tribunal to be set according to what the Parties may agree and lacking such agreement, pursuant to the General Law of Arbitration of Peru in force at the time the dispute arises.

And second, there is the June 12, 2006, "tripartite addendum to agreement of simulcasting and tote services," which contains a clause entitled "Governing Law and Jurisdiction," which provides that

> [t]his Addendum shall be construed and governed in accordance with the laws of the Country of Peru. Each party hereby consents to personal jurisdiction in the Country of Peru and acknowledges that venue is proper in any court in the Country of Peru and agrees that any action related to this Addendum must be brought in a court in the Country of Peru and waives any objection that may exist, now or in the future, with respect to jurisdiction, governing law and venue as set out in this paragraph.

While the parties seem to treat these various clauses as forum selection clauses all approximately achieving the same ends, our de novo review of the language of these agreements, *Whitemaine*, 124 Nev. at 308, 183 P.3d at 141, suggests to us that these clauses may contain distinct and separate meanings.

As an initial matter, the language in the June 2005 memorandum of understanding suggests this clause may be more properly construed as an arbitration clause than as a forum selection clause, and thus, if this clause were deemed controlling, it would be subject to an entirely different type of analysis than the forum selection clause analysis set forth in this opinion. *See, e.g., Gonski v. Dist. Ct.*, 126 Nev. 551, 557-61, 245 P.3d 1164, 1169-73 (2010) (discussing enforceability of arbitration clauses). Turning to the December 2005 agreement's clause, the relevant language could be read as memorializing the agreement on only two relevant matters: that the parties consent to a choice of the laws of Peru and the parties consent to jurisdiction in Peru. It can be argued, however, that there is no requirement contained in this clause that Peru is the *exclusive* forum for jurisdiction over any dispute between the parties. *See, e.g., Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76-77 (9th Cir. 1987) (distinguishing between exclusive and

nonexclusive forum selection clauses). If it is determined that the parties did not intend for the clause to act as an exclusive forum selection clause, then arguably, there is no contractual bar to Tuxedo bringing its tort claims in the Nevada district court.

Finally, with regard to the June 2006 tripartite addendum, our de novo review of the language reveals that it is the provision that most closely resembles a traditional exclusive forum selection clause. This addendum, however, adds a new entity that does not appear to have been a party to the memorandum of understanding or December 15 agreements, and the addendum specifically states that it does not "alter the Definitive Agreement between [Rosenberg] and Tuxedo." Further, the language of the clause itself may specifically limit its application to "any action related to this Addendum." Thus, there appears strong textual support that this clause cannot be construed as the controlling clause in this litigation. Indeed, given that all three clauses may have significant and distinct meanings and implications, the question of which clause controls here would also appear to be a crucial and necessary part of a thorough review of the language of these provisions.

The foregoing discussion highlights the importance of a thorough textual review to any analysis of whether a contractual forum selection clause applies to tort-based claims related to the contract. Indeed, we believe that this discussion aptly demonstrates why the intent-of-the-parties approach, which requires such a detailed analysis of the language of the forum selection clause, represents the best of the established methodologies for resolving this issue. Nonetheless, we recognize that, like the other approaches, the intent-of-the-parties analysis is also not without its own flaws. As highlighted in *Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997), there may be instances when the intent of the parties cannot be determined even after a thorough review of the applicable contracts. In *Terra*, the Eighth Circuit Court of Appeals applied the *Berrett* rule in reviewing whether tort claims were subject to a forum selection clause and, after carefully reviewing the meaning of the terms used in that clause, concluded that it was unable to ascertain whether the parties intended the tort claims brought by the plaintiff to be subject to the clause. *Id.* at 692-95. In order to resolve the stalemate, the *Terra* court applied the First Circuit's "same operative facts" rule-based test to resolve this issue. *Id.* at 695.

In light of the concerns noted above, and the practical insight generated from a review of the facts of this case, we conclude that a modified version of *Terra*'s hybrid approach that combines a careful review of the text with possible consideration of the Ninth and First Circuit rules as secondary factors is best suited for ad-

dressing whether tort-based claims related to a contract are subject to a forum selection clause contained in that agreement. In applying the hybrid test we adopt here today to resolve this issue, the district court must first focus on "the intention of the parties reflected in the wording of particular clauses and the facts of [the] case," *Berrett*, 623 F. Supp. at 948-49, to determine whether related tort claims were meant to be included within the clause's control. Therefore, the initial review must involve a careful and thorough study of the particular clause itself. *See Terra*, 119 F.3d 688; *Berrett*, 623 F. Supp. 946. The clause's context within a series of preexisting or superseding agreements and other particular facts of the case may also be relevant in this initial review. *Berrett*, 623 F. Supp. at 948-49.

If the issue can be resolved based on this examination, then the district court's analysis is concluded. If, however, as in *Terra*, the intent of the parties cannot be discerned from the language of the agreement, then the district court should apply the Ninth and First Circuit rules, in that order, to resolve the issue. As a result, if the issue cannot be resolved through the *Berrett* textual analysis, the next step is to determine whether resolution of the tort-based claims pleaded by the plaintiff relates to the interpretation of the contract, and if they are, then the claims are within the scope of the forum selection clause. *Cf. Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). If, for some reason, the application of this rule still does not resolve the issue, the district court should determine whether the contract-related tort claims involve the same operative facts as a parallel breach of contract claim—that is, whether the plaintiff's cause of action directly concerns the formation or enforcement of the contract containing the forum selection clause, *cf. Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993), or whether the plaintiff could have brought a parallel breach of contract claim and yet did not. *See Terra*, 119 F.3d at 695 (rephrasing the *Lambert* rule). If these tests are satisfied, then the forum selection clause would be applicable to the tort claims. *Lambert*, 983 F.2d at 1121-22. Thus, the Ninth and First Circuit rules should be implemented as relevant factors in the rendering of a final determination of whether tort claims should be subject to a forum selection clause when the parties' intentions on this issue are not otherwise discernible. Finally, we note that, in applying this analysis, the plaintiff has the burden of demonstrating that tort-based claims related to a contract are not subject to a forum selection clause contained in the agreement. *Cf. Tandy Computer Leasing v. Terina's Pizza*, 105 Nev. 841, 844, 784 P.2d 7, 8 (1989) (requiring the party seeking to set aside a forum selection clause to demonstrate a "strong showing" that such relief is warranted).

Because this court had never addressed whether tort-based claims related to a contract were subject to an otherwise enforceable forum selection clause contained in the agreement, the parties and district court did not have the benefit of the test adopted in this opinion in addressing this issue in the underlying case. Accordingly, we conclude that a remand is warranted for the district court to further examine its dismissal in light of this opinion, and we therefore reverse the district court's dismissal of this case based on the applicability of the forum selection clause for that purpose. *See, e.g.*, *Vredenburg v. Sedgwick CMS*, 124 Nev. 553, 563, 188 P.3d 1084, 1092 (2008) (remanding for reexamination under a standard adopted in that opinion). We note that, prior to implementing this test on remand to determine whether Tuxedo's tort-based claims are subject to any forum selection clause, the district court will necessarily need to determine which of the three purported forum selection clauses discussed by the parties is the controlling clause and, once that determination is made, address the relevant issues identified by this court through its de novo review of the district court's contractual interpretation.[5] *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008).

DOUGLAS, C.J., and PICKERING, J., concur.

---

[5]We note that our brief discussion of the issues revealed through our de novo review of particular texts at issue in this appeal should not be construed as instructions to the district court on how to rule on these various issues.

In addition, this opinion should not be construed as affecting existing Nevada law that presupposes the existence of a contract for a party seeking rescission based on fraud in the inducement. *See Awada v. Shuffle Master, Inc.*, 123 Nev. 613, 622, 173 P.3d 707, 713 (2007) (explaining requirements for seeking rescission of a contract because of fraud in the inducement); *J.A. Jones Constr. v. Lehrer McGovern Bovis*, 120 Nev. 277, 290-91, 89 P.3d 1009, 1018 (2004) (stating the elements for fraud in the inducement).